UNITED STATES of America, Plaintiff-Appellee,

v.

Ted Allan JOHNSTON, Defendant-Appellant.

No. 81–1254.

United States Court of Appeals, Fifth Circuit.

Aug. 30, 1982.

---

Walter M. Holcombe, Pecos, Tex. (court-appointed), for defendant-appellant.

Steven C. Hilbig, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GEE and JOHNSON, Circuit Judges, and VAN PELT,* District Judge.

VAN PELT, District Judge:

This case is before us on appeal from a final judgment against appellant entered July 7, 1981, providing for incarceration, for a fine and for a special parole term with other restrictions as set forth in the Order from which this appeal is taken.

Appellant and three others were indicted on March 16, 1981, in two counts. The first count on which appellant and two of the defendants [1] were each found not guilty charged in the Western District of Texas an unlawful conspiracy to commit offenses in violation of 21 U.S.C. § 846 in that they conspired to possess a quantity of marijuana, a Schedule I Controlled Substance, with intent to distribute same, contrary to 21 U.S.C. § 841(a)(1).

Count 2 charged that on or about March 3, 1981, in the Western District of Texas, Defendants Glyn Robert Chambers, Ted Allan Johnston, Billy Bob Witcher and Doyle McCuistion, unlawfully, knowingly and intentionally did possess with intent to distribute [2] a quantity of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, § 841(a)(1). Appellant was found guilty (as charged in Count 2) on this count by the verdict of the jury filed May 14, 1981. The other two defendants were found not guilty.

This panel concludes, notwithstanding the claim of appellant and the certificate of the clerk, that appellant was not charged in Count 2 with a conspiracy.

Count 1 is the only charge of a conspiracy. It charged that the conspiracy commenced in or about the month of February, 1981, and continued continuously up and including about the month of March, 1981. Count 2 alleged the illegal possession was on or about March 3, 1981.

Following receipt of the verdict, the trial judge set the date of July 7, 1981, for the sentencing of Johnston.

Johnston, who claimed to have been employed by the New Mexico State Police and to have been working for New Mexico at the time of the violation here charged, was sentenced to incarceration for three years, with a special parole term of two years. The first six months of the sentence is to be served and the remainder suspended for five years probation with supervision. He was also fined $2,000.

Probably the most difficult single problem with this case is the question of whether appellant was operating in conjunction with the New Mexico Police in regard to the act for which he was convicted. Almost equally puzzling is how the jury could acquit one or both of the other defendants and Johnston on Count 1 or, under the aider and abettor rule, acquit both Witcher and Chambers on Count 2.

---

* District Judge of the District of Nebraska, sitting by designation.

1. Defendant Doyle McCuistion became a witness for the United States in this case and was not placed on trial.

2. The docket sheet of this case, which is page 1 of appellant's record excerpts and is certified by a Deputy Clerk, refers to both counts of the indictment as charging a conspiracy to possess with intent to distribute marijuana, Schedule I, 21:841(a)(1), 846(2). Appellant's brief states on page 4 that appellant was found guilty on Count 2 for "conspiring to possess with intent to distribute marijuana" in violation of 21 USCA 841(a)(1) (SF.: p. 51) (Record Excerpt: Document 2). Document 2 referred to in appellant's brief reads as follows: "VERDICT. We the jury, find the defendant, Ted Allan Johnston, not guilty as charged in Count 1 of the Indictment. Guilty as charged in Count 2 of the Indictment. Dated: 5–14–81. /s/ H. B. Turney, Foreperson."

The only answer to the acquittal is to say that the trial was a swearing match and concede that a historic reason for the jury system is that juries can acquit or convict even if a trial judge on the same record would do the opposite.

■ In this circuit the court has consistently concluded that determining the weight and credibility of evidence is the special province of the trier of fact. We hold in this case that we should not disturb the verdict even though we recognize the verdicts to be disturbing, unless upon reading the entire record, using language stated by Justice O'Connor on June 1, 1982, in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* —— U.S. ——, 102 S.Ct. 2182, 72 L.Ed.2d 606, we are left with the " 'definite and firm conviction that a mistake has been committed ...' "

As is hereafter pointed out, we conclude to affirm appellant's conviction and sentence. The Chambers and Witcher cases are not before us.

Appellant makes 14 assignments of error in his brief. Appellee combines these and discusses them under seven assignments. While we believe there are essentially 10 assignments of error, we will mention all 14.

1. Did the trial court err in failing to grant defendant's Motion to Quash Indictment due to bias of one of the grand jurors who was the wife of counsel of one of the codefendants. This is appellant's issue 6.

The facts are relatively simple. Counsel was appointed for appellant Johnston on March 10, 1981. The indictment on which the case proceeded to trial was filed March 16, 1981.

Defendant Glyn Robert Chambers was represented by Ted Painter whose wife Rebecca was on the grand jury which indicted the defendants. The trial judge recalled that she was appointed as the deputy foreman of the grand jury, but stated that he did not know whether she was present when the indictment against Johnston and the three others was returned. No further showing was ever made as to her participation in the proceeding leading to the indictment on which the trial was held. Appellant assumes Mr. Painter was employed prior to the return of the indictment, although there is no evidence either supporting or disproving this claim. Appellant's claim is that the presence of Painter's wife on the grand jury was tantamount to having an unauthorized, unsworn person bearing witness before the grand jury and at the time of voting, in violation of the Federal Rules of Criminal Procedure, Rule 6(d).

The government claims the matter is not properly presented for review because appellant failed to file a motion containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this Title 28 U.S.C. § 1867(d).

Rule 6 of the Federal Rules of Criminal Procedure provides the methods by which grand jurors may be challenged. Rule 6(b) *Objections to Grand Jury and to Grand Jurors.* Section (1), *Challenges,* provides in part that a defendant

". . . may challenge an individual juror on the ground that the juror is not legally qualified. Challenges shall be made before the administration of the oath to the jurors and shall be tried by the court."

Section (2), *Motion to Dismiss.*

"A motion to dismiss the indictment may be based on objections to the array or on the lack of legal qualification of an individual juror, if not previously determined upon challenge. It shall be made in the manner prescribed in 28 USC § 1867(e) and shall be granted under the conditions prescribed in that statute. An indictment shall not be dismissed on the ground that one or more members of the grand jury were not legally qualified if it appears from the record kept pursuant to subdivision (c) of this rule that 12 or more jurors, after deducting the number not legally qualified, concurred in finding the indictment."

Subsection (d), *Who May Be Present,* provides in part

". . . but no person other than the jurors may be present while the grand jury is deliberating or voting."

Based upon the record made before the trial judge, this assignment of error cannot be sustained.

■ A strong presumption of regularity is accorded to the findings of the grand jury. Defendant has the burden of showing that this grand jury was in fact prejudiced as well as showing that less than 12 jurors concurred in filing the indictment. Such a showing has not been made. The record does not support the claim that Rebecca Painter was an unauthorized person within the meaning of Rule 6 of the Federal Rules of Criminal Procedure.

Appellant assigns as error the fact that his pretrial motions were not heard until the day of the trial and actually were heard immediately prior to the trial. This is appellant's 9th issue. The argument in appellant's brief is directed more to the failure of the government to disclose certain information than it is to the failure by the trial court to hear the motions in advance.

Rule 12(e) of the Federal Rules of Criminal Procedure requires as to pretrial motions only that they be ruled on by the court "before trial unless the court, for good cause, orders that it be deferred. . . ."

An example of the matters complained about is that Appellant Johnston had been blackballed by the Drug Enforcement Administration (DEA). This was brought out in the examination of witness Neal W. Curran, who was called as a witness by counsel for appellant. When the government stated that it wanted to inquire as to the reason for the DEA blackball, Mr. Holcombe objected and in his objection showed that he knew about it and in the discussion stated that Johnston had won his case "and the DEA is mad at him because he won the case out there."

■ The court did not permit government counsel to go into the DEA matter over Holcombe's objection. We will not now reverse when appellant's counsel prevented the matters of which counsel was aware from being explained.

■ We do not find reversible error in the fact that the trial court passed upon the pretrial motions on the day the trial was to begin or in its rulings on evidence which appellant has assigned.

Appellant contends that there was error in the court's denial of appellant's Motion to Suppress Evidence. This is referred to in appellant's third and fourth assignments of error. The third assignment related to testimony as to the search and the question of the standing of Johnston to object, while the fourth assignment related to the chain of custody of the marijuana. We discuss them together.

It is clear when Doyle McCuistion and appellant were stopped on the highway and arrested they were riding in a 1972 black over blue Ford. The top was black and the body blue. This is the car they were riding in on March 3, 1981, when they were stopped about eleven o'clock in the morning by witness Ray Hamilton, a U.S. Customs Inspector. At that time Mr. McCuistion gave the name of Mr. House and furnished a New Mexico driver's license. Johnston had no identification. At that time the inspectors found a small amount of marijuana. It was exactly 4.1 grams. It was found in the back seat on the passenger side, wrapped up in a newspaper. Some loose marijuana was found also, scattered around in a briefcase found in the car. It was "not enough to make anything out of." Eventually the case was declined both by the Drug Enforcement Administration and the sheriff. An Administrative penalty in the form of a fine of $50.00 was assessed and was paid by the man claiming to be Mr. House. Following a conclusion by the officers "to release them because we had a suspicion they might pick up something later on," a surveillance was put on these two men when they left Presidio, Texas. The Customs Officer at Presidio, Lawrence Terry, notified Roger C. Carly, a Border Patrol Agent at Marfa, Texas, to conduct a surveillance of a 1972 Ford with a black vinyl top over blue body. The New Mexico license number of this Ford was given Carly by Terry in this telephone call. Carly saw this car approximately an hour after the phone call on Highway 67 about five miles

south of Marfa. Two males were in it. This surveillance continued until into the afternoon with the officers on occasion losing the location of the Ford and later picking it up. The filling of the tank of the blue car at a Fina station was observed. It was later observed going east toward Alpine. Special Agent Nichols of the Drug Enforcement Administration also participated in the surveillance. Both officers described events in detail beginning about 11:30 and continuing until about 3:30 in the afternoon. The events related to appellant, to McCuistion, to Chambers, and Witcher. They tell of a red vehicle Chambers was driving and of a white suburban type vehicle which they saw leave Witcher's residence and of a gold Plymouth sedan with Missouri license plates which Witcher was driving at the time of the search which they described. They also had seen the Chambers' red vehicle go to the Witcher residence. Nothing is gained by reciting the details of an over four hour surveillance. When they located the Ford the last time, it was on Highway 90 about five miles west of Alpine. Shortly thereafter the testifying officer saw these cars at a roadside park west of Alpine. They passed by seeing Witcher in the gold Plymouth sedan and appellant and McCuistion in the blue Ford sedan. As both cars started to move, the Agents stopped them and received identification from Mr. Witcher. He said he had met the people in the blue Ford in Ojinaga. They asked Witcher to open the trunk to the Plymouth, which he did. In the trunk they found a package of black garbage bags and a set of scales. In the trunk of the blue vehicle they found a large bundle in a black plastic garbage bag, which they opened, and there found government exhibit 1–D, which is the marijuana, possession of which was charged in Count 2.

■ Appellant testified that he never possessed the blue Ford and that the marijuana was owned by McCuistion. From this, the government contends that Johnston did not have standing to object to the search of the trunk of the McCuistion car. We agree with this. *See Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387.

"Judged by the foregoing analysis, petitioners' claims must fail. They asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized. And as we have previously indicated, the fact that they were 'legitimately on [the] premises' in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched. It is unnecessary for us to decide here whether the same expectations of privacy are warranted in a car as would be justified in a dwelling place in analogous circumstances. We have on numerous occasions pointed out that cars are not to be treated identically with houses or apartments for Fourth Amendment purposes. See *United States v. Chadwick,* 433 U.S., [1] at 12 [97 S.Ct. 2476 at 2484]; *United States v. Martinez-Fuerte,* 428 U.S. 543, 561 [96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116] (1976); *Cardwell v. Lewis,* 417 U.S. 583, 590 [94 S.Ct. 2464, 2469, 41 L.Ed.2d 325] (1974) (plurality opinion). But here petitioners' claim is one which would fail even in an analogous situation in a dwelling place, since they made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers. Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." (Footnote omitted.)

*Rakas* 439 U.S. at 148–49, 99 S.Ct. at 432–433.

Additional authority may be unnecessary. As recently as June 1, 1982, in *United States v. Ross,* —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the United States Supreme Court stated in part:

"... if probable cause justified the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."

We see no occasion to set forth in this opinion the evidence with regard to the chain of custody of the marijuana. We are satisfied with the evidence, with its sealing and initialing and with its mailing to a Drug Enforcement Administration laboratory. We are satisfied with the testimony of the chemist who analyzed it and described the package from which the sample had been taken. We find assignments of error 3 and 4 to be without merit.

Assignments 5 and 12 might well be discussed together because the subjects are related. The court will proceed, however, as counsel has with a separate discussion.

The fifth assignment relates to the sufficiency of the evidence under Count 2 and appellant's lack of intent to possess or distribute marijuana because he was an undercover worker. He also indicates that the facts may show entrapment.

The evidence must be viewed in the light most favorable to the government with all reasonable inferences drawn to support the jury's verdict. *See Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. This court has recently again so held in *United States v. Young,* 677 F.2d 115 (5th Cir. 1981).

This case was a swearing match. The testimony of defendants Chambers and Witcher was inconsistent with the testimony of defendant Johnston and witness McCuistion. As above noted, McCuistion was not tried and was the government's informer witness. The government relies on *United States v. Lerma,* 657 F.2d 786 (5th Cir. 1981) in which it is stated:

> The jury is the ultimate arbiter of the credibility of witnesses *United States v. Cravero,* 530 F.2d 666, 670 (5th Cir. 1976). Whether [a witness] testified truthfully was an issue for the jury. Only when testimony is so unbelievable on its face that it defies physical laws should the court intervene and declare it incredible as a matter of law.

We have related the testimony as to surveillance earlier in this opinion. We do not believe a further recital of the major witnesses' testimony would add anything to the law of this circuit, and to further lengthen this opinion to recite the particular facts of this case would not be justified in assisting lawyers in advising their clients or the courts because disputes in testimony are not unusual and seldom are the facts of two drug cases alike. It is not for this court to decide that Chambers and Witcher also should have been found guilty. The government's evidence, if believed, was sufficient to have found all three guilty as aiders and abettors under Count 2 and as conspirators under Count 1. We have only the case of Johnston before us and that only as it relates to Count 2.

The 12th assignment of error relates to the aiding and abetting instruction to which timely objection was made by Johnston's counsel.

We regard this as a proper case for the aider and abettor instruction. The statement of the law in the charge to the jury was correct, and appellant raises only the question whether it should have been given.

The recital of the evidence as to the search and seizure and as to the marijuana found in the blue Ford car occupied by McCuistion and Johnston alone would justify the aider and abettor instruction. Even if McCuistion was the sole possessor or owner of the marijuana, under the circumstances related in the surveillance, the jury could properly have held Johnston an aider and abettor. Assignments 1, 5, and 12 are without merit.

Logically, assignment of error 11 could have followed the discussion relating to assignments 5 and 12. It is the contention in assignment 11 that the court erred in not letting the jury hear how the marijuana was located. Reference is made in appellant's brief to two questions on cross examination of McCuistion by Johnston's counsel, to wit: Lines 8–13, Page 253, of the Transcript of Evidence. The first question was, "Did you open the trunk for Mr. Nichols?" with the answer, "No sir." No objection was made to this and we doubt if

counsel really has a complaint on this answer. The second question, "How did the trunk opening come about?" to which objection was made as to the relevance of evidence and sustained by the court.

On direct examination, the witness had stated that he asked the agents if they had a search warrant and that one of them, who he believed was Mr. Nichols, said they didn't, "but they were going to search the cars." In answer to the next question, he stated they were arrested and in answer to the question "They found the marijuana?" the answer was, "They did." Following the sustaining of the objection, Lines 11–14, Page 253, the court permitted a question as to whether anyone had been arrested prior to the opening of the trunk to which the answer was, "No sir." No offer of proof of any kind was made. No prejudice appears from the failure to answer the question as to how the trunk opening came about, and we conclude that there was no reversible error in the court's ruling.

■ Appellant assigns as error misconduct of the prosecution, mainly in the final argument. See issues number 2 and 8. One of the claims related to Johnston being blackballed and the other about his taking marijuana up to New Mexico and selling it. The trial judge ruled that it is the jury's job to determine what was said, that it is the jury's recollection of the facts that will be the evidence and not what the attorneys say or object to. As to the blackballing, Johnston's counsel had cross examined on it.

The second assignment of error also related to comment by counsel of appellant's failure to testify as being a violation of his Fifth Amendment rights.

During the entire argument to the jury, appellant's counsel made but three objections. None of them concerned Johnston's Fifth Amendment rights or his failure to testify. They concern the blackballing matter, in substance whether he was coming down to buy dope in Alpine, and whether he told anyone in substance that he was going to sell marijuana in New Mexico. On each occasion, as is shown on Pages 574–5 of the record, the court stated in substance that the jury will recall the testimony, and that it is their recollection of the facts that is the evidence and "not what the attorneys say or what they object to." We conclude the trial court exercised proper discretion in ruling on the objections in the manner he did. There is no reversible error in the matter complained about in assignments 2 and 8.

■ Error 9 relates to the failure to produce the grand jury testimony until the trial had started. It is clear that in compliance with the Jencks Act and before the witness who testified before the grand jury was called to testify, the grand jury testimony was made available to counsel. A request for a continuance was not made and there was no claim of surprise or other harm to appellant in proceeding with the trial.

The burden is upon the appellant to demonstrate "particularized need" in order to obtain grand jury proceedings. *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *United States v. Tucker,* 526 F.2d 279 (5th Cir.), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1738, 48 L.Ed.2d 203 (1976). No such showing was made. We conclude as to this also that no harm was shown and thus there was no reversible error.

■ Appellant also claims error (assignment 7) because the trial court refused to issue subpoenas for two jurors after the trial was over. As to both jurors, Johnston's counsel had discovered that they were related to defendants or victims of crime prosecuted by Mr. Holcombe as a state district attorney and "were likely dissatisfied with the results of his respective prosecution efforts, and thus were biased against him." No affidavits were filed in support of the motion. There were no claims that these jurors had demonstrated or admitted to any prejudice against appellant or his attorney. The trial court denied the subpoenas. This court concludes that there was no reversible error in this ruling.

It is clear from a reading of the entire record of the testimony that both the de-

fendant and the government had an ample opportunity to present their contentions. A considerable portion of the evidence was not subject to reconciliation. The jury was faced with believing the informant and the appellant on the one hand or the acquitted defendants on the other. The jury disbelieved Johnston's story and most of McCuistion's.

Assignments 10, 13, and 14 in a sense are catch-alls. Fourteen, which is in the alternative, claims error not only in the failure to grant appellant's motion for Judgment of Acquittal, but also in denying his Motion for a New Trial for any of the 13 errors urged by him. The 13th assignment also related to what counsel claimed to be cumulative errors of jury argument and contained an unclear assignment as to the government justifying the indictment of Johnston by stressing the sanctions of the prosecutor via the prosecutor's questions of a witness. Assignment 10, in addition to charging a failure to hear the motion for production of grand jury testimony, which we have discussed, relates to a claimed failure to inform the grand jury of Johnston's status as an agent for the police. We conclude that the court's rulings on the matters covered by these assignments do not show an abuse of discretion by the trial judge.

We also observe that the trial judge in sentencing the appellant gave consideration to his claim of working for the New Mexico police. The trial judge heard the testimony. He had the benefit of observing all the witnesses. We conclude we should not modify the sentence imposed and that we do not have authority to set aside the verdict of the jury.

We make this final comment. Verdicts of juries never find defendants to be innocent, even though such expressions are often used by the news media. Verdicts returned under a correct charge and form of verdict such as was given and used by the trial judge in this case when the verdict is not guilty, only find that the evidence was insufficient to prove the defendants guilty beyond a reasonable doubt. We are not, by this opinion, declaring the innocence of any

of the original defendants as we affirm appellant's conviction on Count 2.

We are left with a firm and abiding conviction that, while Johnston did not have a perfect trial, he did have a fair trial. A fair trial, not a perfect trial, is all that is implicitly required under our Constitution.

AFFIRMED.