UNITED STATES of America,
Plaintiff–Appellee,

v.

Jack Eugene HARRISON,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Gary Don JETER, Defendant–Appellant.

Nos. 90–4204, 90–4250
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 19, 1990.

Charles O. Grigson, Austin, Tex., for Jack Eugene Harrison.

L. Stuart Platt, Asst. U.S. Atty., Bob Wortham, U.S. Atty., Beaumont, Tex., for the U.S.

Stanley G. Schneider, Houston, Tex., for Gary Don Jeter.

Before KING, GARWOOD, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

In this consolidated appeal, Jack Eugene Harrison and Gary Don Jeter contest their convictions of drug-related offenses. After entering conditional pleas of guilty, Harrison was convicted of possession of cocaine with intent to distribute, and Jeter was convicted of conspiracy to distribute and possess with intent to distribute marijuana. Each defendant now complains that the district court erred by denying his motion to suppress evidence and by failing to prevent pretrial delays. In addition, Harrison claims double jeopardy, and Jeter complains of the alleged excessiveness of his sentence. Finding no error, we affirm both convictions and uphold Jeter's sentence.

## EARLIER PROCEEDINGS

Chambers County sheriff's deputies arrested appellants in July 1982. That same month Texas indicted both appellants for drug offenses. Harrison entered a plea agreement in July 1983 and received a probated sentence. He was released from probation in December 1985. State charges originally filed against Jeter were dropped in 1982.

On July 1, 1987, two days before the limitations period was to expire, appellants and three others were indicted in a five-count indictment arising out of the July 1982 incident. Motions to suppress evidence and to dismiss for want of a speedy trial were heard and denied.

Count 5 of the indictment was severed as to appellant Harrison and transferred to the United States District Court in Sherman, Texas. Harrison entered a conditional plea to that count and received a probated sentence. Remaining counts against him were dismissed later.

Jeter pleaded guilty in the United States District Court in Beaumont, Texas to Count 3 of the indictment. He entered a conditional plea and was sentenced to two years and six months' imprisonment. Remaining counts were dismissed. Both appellants filed timely notices of appeal.

## FACTS

Chambers County sheriff's officers became aware that an airplane might be bringing illegal drugs to a private dirt airstrip, at night, in rural Chambers County. Several law enforcement officers were dispatched to the area to watch for the airplane and to observe the surrounding roads. Captain Edward Vaccaro of the sheriff's department was in charge of the operation. At approximately 9:00 p.m. one of the officers radioed the others that he saw an airplane leave the area. Officer Martin heard this broadcast and soon observed a pickup truck without lights pulling onto the rural road where he was stationed. He also thought the truck might be speeding. He chased the truck and pulled it over within a hundred yards of the interstate highway. Harrison was the driver and Jeter was the passenger. Officer Martin frisked them for weapons but found none. Captain Vaccaro and other officers soon arrived, and Vaccaro asked Harrison if the officers could look in the truckbed, which was covered with a tarpaulin. Harrison agreed and helped Vaccaro unsnap the tarp, revealing several hoses and a cardboard box wrapped in plastic. Vaccaro sought to open the box, and Harrison offered his own pocket knife to Vaccaro for that purpose. Vaccaro found marijuana inside the box and arrested the appellants. Officers then looked inside the truck and found a gym bag containing several battery-operated lights. The truck was removed to the sheriff's office, where a thorough search revealed a .22 caliber pistol in the glove box, a brief case, an airplane frequency radio, and a vial of cocaine under the dashboard. No search warrant was obtained. Appellants were advised of their

rights only after the officers had found the marijuana and arrested them.

On the night of the arrests United States Customs agents learned of the arrests and the circumstances. There was no federal involvement in the matter until late September 1984, when the sheriff met with federal authorities to request that charges against appellant be pursued. The United States Customs Service opened a file on the matter in February 1987, but no investigation commenced until May 1987.

## MOTIONS TO SUPPRESS

Appellants contend that the district court erred in denying their motions to suppress evidence seized from the truck. They argue that there was no probable cause to stop the truck and that the claimed traffic violations were merely a pretext. They further argue that there was ample time to obtain a search warrant and that the warrantless search of the truck and the containers found therein was, therefore, unreasonable.

We review the district court's fact-findings on a motion to suppress under the clearly erroneous standard. *United States v. Duckett,* 583 F.2d 1309, 1313 (5th Cir. 1978); *United States v. Basey,* 816 F.2d 980, 987 (5th Cir.1987).

We note preliminarily that appellant Jeter lacks standing to contest the search. He asserts no ownership interest in the truck. *See Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), *reh'g denied* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979); *United States v. Johnston,* 685 F.2d 934, 939 (5th Cir.), *cert. denied,* 460 U.S. 1053, 103 S.Ct. 1501, 75 L.Ed.2d 932 (1983). He argues that, however, as a passenger, he had an expectation of privacy in the items within his immediate control in the truck's cab. This argument fails for two reasons. First, the driver consented to the search, and, the law is clear that once the officers found contraband in the bed of the truck, they could proceed to search the remainder of the vehicle. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

Second, Jeter pleaded guilty to the count charging possession of the marijuana found in the bed of the truck, not to the count dealing with the vial of cocaine in the cab of the truck.

It is well-established that a vehicle and its occupants may be briefly detained for investigation based not upon probable cause, as appellants argue, but upon reasonable suspicion of criminal activity. *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). We determine reasonableness by examining the totality of the circumstances existing at the time of the stop. The detaining officer must have a particularized and objective basis for suspecting of criminal activity the person detained. *United States v. Aldridge,* 719 F.2d 368, 371 (11th Cir.1983). *Terry* provides a two-step inquiry for determining reasonableness: "Whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879. Put otherwise, an officer who stops a motor vehicle must have "at least an articulable and reasonable suspicion that ... either the vehicle or an occupant is ... subject to seizure for violation of law." *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979). The fact that Officer Martin may have given a pretextual traffic violation as the reason for this stop will not invalidate an otherwise justified stop. *United States v. Hawkins,* 811 F.2d 210, 213 (3d Cir.), *cert. denied,* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987).

The record makes clear that Officer Martin had a reasonable suspicion of criminal activity sufficient to support the stop. He knew that an airplane, and very likely a pickup truck, would be involved in a drug smuggling operation in the area at that precise time. He knew that an airplane had just been sighted leaving the airstrip on which officers expected the smuggling operations would take place. Martin saw a truck leaving a daytime business area (a farm that he knew did not operate during

the evening hours). The truck, which was operating without lights, was the only vehicle observed in the area adjacent to the suspect landing strip. In the officer's opinion the driver was attempting to speed away from him. Furthermore, Martin did not recognize the truck as belonging to any of the citizens who lived and worked in that area. A tarpaulin covered its bed, hiding anything therein from view. The totality of these circumstances was sufficient to create reasonable suspicion of criminal activity. Additionally, the collective knowledge of all officers involved in the matter can be considered. *United States v. Kreimes,* 649 F.2d 1185 (5th Cir.1981). Captain Vaccaro had knowledge from a tip that may or may not have been conveyed to Officer Martin.

■ We review the district court's findings of historical facts on the issue of reasonable suspicion under the clearly erroneous standard. The ultimate determination of the reasonableness of an investigatory stop, however, is a conclusion of law reviewed *de novo. United States v. Basey,* 816 F.2d 980, 988 (5th Cir.1987).

In *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972), the Supreme Court advised that the proper determination is whether the information that forms the basis of a police officer's action possesses indicia of reliability. We think it clearly does. This case is factually quite similar to *Kreimes,* in which we found that reasonable suspicion justified the stopping of a vehicle. In that case, a large aircraft without navigation lights was heard to land. A truck unlike trucks normally seen in the area was travelling without lights from the direction where the plane was suspected to have landed. Finally, when the driver apparently realized that an officer in a patrol car had seen the truck, the driver stopped to let out a passenger.

■ Harrison's complaint that a warrant was necessary for the search fails by virtue of the uncontested facts, which clearly establish that he voluntarily consented to the search. This issue is a question of fact to be determined from the totality of the circumstances. *United*

*States v. Gonzalez–Basulto,* 898 F.2d 1011, 1012–1013 (5th Cir.1990). Again, we examine the district court's findings for clear error. *United States v. Tedford,* 875 F.2d 446 (5th Cir.1989). As the trial court observed, the evidence is uncontested. Harrison argues on appeal that he was coerced and his will overborne by the number and conduct of the officers and by their weapons. The record simply does not support this argument. Instead, the record shows that he not only consented but also voluntarily assisted Captain Vaccaro in the search. There is not a shred of evidence to support the claims of coercion.

■ Next, Harrison claims that the search of the interior of the truck was without authority. However, once the marijuana was found in the bed of the truck, a warrantless search of every part of the vehicle and its contents was permitted. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *United States v. Sanchez,* 861 F.2d 89 (5th Cir. 1988). The search need not be done immediately and if begun at the scene can be continued later at another location. *United States v. Johns,* 469 U.S. 478, 484–485, 105 S.Ct. 881, 885–886, 83 L.Ed.2d 890 (1985).

## INDICTMENT DELAY

Appellants argue that their fifth amendment rights to due process and sixth amendment rights to speedy trial were violated by the delay between the occurrence of the offense and the bringing of the federal indictment. They also contend that this delay violates Rule 48(b) of the Federal Rules of Criminal Procedure.

■ The simple answer to appellants' sixth amendment argument is that there is no sixth amendment right to a speedy indictment. *United States v. Carlock,* 806 F.2d 535, 549 (5th Cir.), *cert. denied,* 480 U.S. 949, 107 S.Ct. 1611, 94 L.Ed.2d 796 (1987). The primary safeguard of appellants' rights is the statute of limitations. *United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971). Because the delay alleged in this

case occurred before the indictment, the sixth amendment is inapplicable. *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir.), *cert. denied*, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986).

Appellants rely on *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). That case is factually distinguishable. In *Barker* the State of Kentucky, and only the state, prosecuted the defendant. The delays there involved were all in a single prosecution. Those circumstances are not present in this case. However, even if the *Barker* tests to determine a sixth amendment violation are applied in this case, we find that the length of delay from indictment to trial was minimal. In fact, appellants do not contend that this is the delay that caused them prejudice. Instead, they argue that the delay between the commission of the crime and the federal indictment caused the prejudice. The record, however, does not support this argument.

■ Appellants alternately argue that the cumulative effect of the delays has violated their due process rights under the fifth amendment. To establish this ground, an appellant must show that actual prejudice resulted from the delay. *United States v. Coppola*, 788 F.2d 303, 308 (5th Cir.1986). " 'Speculative allegations, such as general allegation of loss of witnesses and failure of memories, are insufficient to demonstrate the actual prejudice required.' " *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir.1986). The record in this case simply does not support these claims of prejudice.

■ Finally, appellants contend that the delay entitles them to dismissal under Federal Rule of Criminal Procedure 48(b). However, as previously indicated, there is no showing that the delay was unnecessary. Delays of almost five years have been found not to violate Rule 48(b) in conspiracy cases. *See United States v. Wellman*, 830 F.2d 1453 (7th Cir.1987); *United States v. Butler*, 792 F.2d 1528 (11th Cir.1986); *United States v. Coppola*, 788 F.2d 303 (5th Cir.1986). The appropriate analysis under this rule requires the

application of the *Barker* factors. For the reasons previously indicated in reference to those factors, this argument likewise fails.

### DOUBLE JEOPARDY

Appellant Harrison contends that the double jeopardy clause of the fifth amendment barred his prosecution in federal court because the federal government tried him for the same acts for which the state had prosecuted him earlier. The double jeopardy clause provides in relevant part: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend V.

■ As Harrison acknowledges, the Supreme Court has held that, based on the dual sovereignty concept underlying the federal union, an act may be a crime under both federal and state laws and a defendant may be punished by each sovereign for the same act without offending the double jeopardy clause. *See, e.g., Abbate v. United States*, 359 U.S. 187, 195, 79 S.Ct. 666, 670, 3 L.Ed.2d 729 (1959); *United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922). Yet Harrison argues that his case fits within an exception to the dual sovereignty doctrine because collusion between state and federal prosecutors blurred the distinction between the sovereigns so that he was effectively prosecuted twice by the same sovereign. *See United States v. Patterson*, 809 F.2d 244, 247 (5th Cir.1987).

■ Harrison contends that the Supreme Court has indicated that the dual sovereignty doctrine is limited by the qualification that one sovereign's prosecution may not be used as a cover or a tool for another sovereign's prosecution. *See Bartkus v. Illinois*, 359 U.S. 121, 123, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959). This argument, however, is flawed.

*Bartkus* does suggest that a state prosecution may not be used as a cover and a tool for a federal prosecution. *Id.* The Court, however, did not define a clear exception in that case. *Patterson*, 809 F.2d at 247 n. 2. In fact, the *Bartkus* court held that the record failed to establish the claim

that the state prosecution had been a tool of the federal authorities. *Bartkus*, 359 U.S. at 123–24, 79 S.Ct. at 678. "The Court, therefore, did not squarely address the issue of whether, if substantiated by the record, a 'sham' situation would constitute an exception to the dual sovereignty doctrine." *Patterson*, 809 F.2d at 247 n. 2.

Furthermore, Harrison seems to argue that the federal prosecution was used as a cover and a tool for the state authorities. Even if we assume, *arguendo*, that this vague exception applies to both federal and state authorities, Harrison has failed to meet the clear Fifth Circuit standard for successfully asserting a claim of double jeopardy before trial. *See id.* at 247; *United States v. Stricklin*, 591 F.2d 1112 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979).

■ In *Stricklin*, this Court held that a defendant has the burden of going forward with the evidence that one prosecution was a mere tool of the other sovereign's authorities. *Stricklin*, 591 F.2d at 1117–18. Once the defendant tenders a prima facie double jeopardy claim, the burden of persuasion shifts to the government. *Id.*

After reviewing the record, however, we find no evidence that the federal prosecution was merely a sham that allowed state authorities to reprosecute Harrison for the same offense. The evidence failed to show that the federal government participated in Harrison's state plea bargain agreement. Furthermore, no officials made promises regarding possible federal prosecution. Existing Fifth Circuit precedent "specifically provides that unless a federal agent actually participates in a state court plea bargain, subsequent prosecution in federal court does not violate the defendant's constitutional rights." *See e.g., United States v. Paul*, 853 F.2d 308, 311 (5th Cir.1988), *cert. denied*, 488 U.S. 1012, 109 S.Ct. 801, 102 L.Ed.2d 792 (1989); *United States v. Sandate*, 630 F.2d 326, 328 (5th Cir.1980), *cert. denied*, 450 U.S. 922, 101 S.Ct. 1372, 67 L.Ed.2d 351 (1981).

1. The Supreme Court first acknowledged this policy in *Petite v. United States*, 361 U.S. 529,

The district court properly concluded that Harrison's allegations were insufficient to make out a prima facie case on the double jeopardy issue. We find no reason to overturn this conclusion.

■ Harrison further argues that the Justice Department's dual prosecution policy, or *Petite* policy,[1] supports his double jeopardy claim. Under this policy, federal prosecution for an offense that was previously the subject of a state prosecution is allowed only if there are compelling reasons and if the prosecuting attorney obtains prior approval from an assistant United States attorney general. *See Rinaldi v. United States*, 434 U.S. 22, 28, 98 S.Ct. 81, 84, 54 L.Ed.2d 207 (1977) (per curiam).

Even if the government failed to adhere to the *Petite* policy in this case, this failure would be irrelevant. *See Patterson*, 809 F.2d at 248. Courts have consistently held that the *Petite* policy is an internal rule of the Justice Department; criminal defendants may not invoke it to bar prosecution by the federal government. *See, e.g., id., United States v. Schwartz*, 787 F.2d 257, 267 (7th Cir.1986); *United States v. Thomas*, 759 F.2d 659, 668 (8th Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985); *United States v. Catino*, 735 F.2d 718, 725 (2d Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984); *United States v. Nelligan*, 573 F.2d 251, 255 (5th Cir.1978).

## EIGHTH AMENDMENT CLAIM

■ Appellant Jeter complains that a sentence of two and a half years violates his eighth amendment right to be free from cruel and unusual punishment. He argues primarily that his co-defendant received a probated sentence from a different judge. It is clear that disparity of sentences among co-defendants, standing alone, is not grounds for reversal. *United States v. Castillo–Roman*, 774 F.2d 1280, 1283 (5th Cir.1985). Defendants cannot rely upon the sentences received by other defendants as proper yardsticks for the sentences they should receive. *Id.* at 1284.

530–31, 80 S.Ct. 450, 451, 4 L.Ed.2d 490, 491–92 (1960) (per curiam).

Sentencing is a matter of discretion. As we have previously noted, it is probably the most difficult task faced by trial judges. They must be given broad discretion to treat each defendant as an individual. *United States v. Hayes,* 589 F.2d 811, 827 (5th Cir.), *cert. denied,* 444 U.S. 847, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979). The record shows that the sentencing judge considered a variety of factors in imposing the sentence. He studied Jeter's presentence report and assessed Jeter's financial status as reflected in individual tax records. In addition, although the sentencing guidelines were inapplicable to Jeter's offense, the judge compared the proposed sentence to the sentence range recommended by the guidelines. The amount of drugs involved in Jeter's offense could easily have justified a much more severe sentence. To be entitled to relief on appeal, a defendant must prove that his sentence was a result of an abuse of discretion. *United States v. Lindell,* 881 F.2d 1313, 1324 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 1152, 107 L.Ed.2d 1056 (1989). Jeter has failed to carry that burden.

AFFIRMED.