**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roberto GARCIA, Defendant–Appellant.**

**No. 91–1022.**

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1991.

Timothy W. Crooks, Asst. Fed. Public Defender, Ira R. Kirkendoll, Fed. Public Defender, Ft. Worth, Tex., for defendant-appellant.

Frank D. Able, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Ft. Worth, Tex., for plaintiff-appellee.

Before SMITH and DUHÉ, Circuit Judges, and POLOZOLA,[1] District Judge:

POLOZOLA, District Judge:

Following the district court's denial of his motion to suppress evidence, Roberto Garcia entered a conditional plea of guilty pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure[2] to making a false statement to a firearms dealer.[3]

Garcia contends on appeal that the trial court erred in refusing to suppress a pawn receipt for a hand gun which was discover-

---

**1.** District Judge of the Middle District of Louisiana, sitting by designation.

**2.** With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

**3.** 18 U.S.C. §§ 922(a)(6), (g)(1) and 18 U.S.C. §§ 924(a)(1) and (2).

ed by border patrol agents during a search of his wallet. We affirm the decision of the trial court.

## I.

There are three issues which are raised on this appeal:

(1) Did the border patrol agents have "reasonable suspicion" to believe Garcia was an illegal alien to maintain an investigatory stop?

(2) Did the agents have the requisite probable cause to conduct a search of Garcia's person and effects, including his wallet?

(3) Was the search of every document in Garcia's wallet excessive in relation to the lawful objectives of a search for evidence of Garcia's citizenship?

The district court found that the search was lawful and proper under the facts of this case. We review the district court's findings of fact under the clearly erroneous standard.[4] The reasonableness of the stop is a conclusion of law and is reviewed *de novo*.[5]

## II.

While on patrol in a marked vehicle in the early morning hours of January 6, 1990, border patrol agents observed a vehicle which was a type commonly used by illegal aliens on a Texas highway within 18 to 20 miles of the United States–Mexican border. Suspecting the driver was an illegal alien, the agents followed the vehicle while running a check of the registration and the "rolodex."[6] The dispatcher who checked the rolodex erroneously indicated that the vehicle had been used in an alien smuggling operation during the prior week. The agents on patrol did not know that the dispatcher had given them erroneous information. Upon receipt of this information,

the agents turned on their emergency lights in an attempt to stop the Garcia vehicle. Instead of stopping, Garcia accelerated his speed and was pursued by the agents for approximately five or six miles before he stopped his vehicle in the middle of the highway.

Garcia was the only occupant in the vehicle. Upon being questioned by the agents, Garcia refused to give the agents his name or citizenship. The agents ordered him to get out of the vehicle and searched him and his vehicle for weapons. Because Garcia refused to identify himself or his citizenship, the agents searched his wallet seeking information on these issues. During this initial search of the wallet, the agents found a Texas driver's license for "Roberto Garcia," a Fort Worth probation officer's card, and the card of a border patrol agent. When Garcia was confronted with the information, he again refused to confirm or deny that he was Roberto Garcia. Because of Garcia's refusal to identify himself, the agents continued to search his wallet for information that could substantiate whether or not he was Garcia and what his citizenship was. During this second search of the wallet, the agents discovered a pawn shop receipt for the sale of a .45 caliber hand gun. After the agents found the receipt for the hand gun, Garcia acknowledged that he was Roberto Garcia and a United States citizen. The agents permitted Garcia to leave after returning his wallet with the pawn ticket to him.

Garcia, who is a convicted felon, was subsequently indicted for possession of the hand gun under 18 U.S.C. §§ 922(a)(6) and (g)(1), and 924(a)(1) & (2). After initially entering a not guilty plea, Garcia filed a motion to suppress the pawn shop receipt. The district court denied Garcia's motion to suppress.[7] Garcia then entered a conditional guilty plea to the charges set forth in

---

**4.** *United States v. Harrison,* 918 F.2d 469, 472–73 (5th Cir.1990); *United States v. Shaw,* 894 F.2d 689, 691 (5th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 85, 112 L.Ed.2d 57 (1990); *United States v. Pierce,* 893 F.2d 669, 673 (5th Cir.1990).

**5.** *Harrison,* 918 F.2d at 473; *United States v. Basey,* 816 F.2d 980, 988 (5th Cir.1987).

**6.** The "rolodex" is a record system maintained by the Border Patrol of vehicles previously used in the smuggling of illegal aliens.

**7.** *United States v. Garcia,* CR No. 4–90–49–E, *Order Denying Motion to Suppress* (N.D.Tex. Aug. 26, 1990).

the indictment, reserving his right to appeal the district court's ruling denying his motion to suppress.

### III.

Garcia contends that the agents lacked "reasonable suspicion" to stop his vehicle in violation of the standard set forth in *United States v. Brignoni–Ponce.*[8] Garcia also argues that the rolodex information relied upon by the agent was incorrect and, therefore, cannot serve as the basis for the agents' decision to stop his vehicle. We reject both contentions.

■■■ An agent may conduct a brief investigatory stop of a vehicle and its occupants, without probable cause, based solely on the "reasonable suspicion" that the person is engaged, or about to be engaged, in criminal activity.[9] The reasonableness of the stop is determined by the totality of the circumstances at the time of the stop.[10] In *United States v. Brignoni–Ponce,* the Supreme Court noted that roving border patrols must have "specific articulable facts, together with reasonable inferences from those facts," to stop a vehicle suspected of containing illegal aliens.[11] The agent must have a particularized and objective basis for suspecting the detained individual of criminal activity.[12]

In *Brignoni–Ponce,* the Supreme Court listed several factors that support reasonable suspicion. These factors include the vehicle's characteristics, the proximity to the border, traffic patterns, previous experience with alien traffic, and driver behavior, such as attempts to evade agents.[13]

■■ Garcia contends that since the agents relied on incorrect information, the search conducted by the agents was improper. It is clear from the record that the dispatcher told the agents that Garcia's vehicle had been involved with illegal aliens the week prior to the search. However, the actual date of the appellant's involvement on the rolodex was November 14, 1989, approximately two months prior to the time the agents stopped Garcia's vehicle. The agents' reliance on the erroneous information does not make the stop of the Garcia vehicle and the subsequent search of Garcia improper under the facts of this case.

In *United States v. De Leon–Reyna,*[14] this Court, sitting en banc, held that the "good faith" exception to the exclusionary rule is applicable when an agent relies on incorrect information from other agents if, after reviewing the totality of the circumstances, an objectively reasonable officer would have relied on the information in deciding whether to stop the vehicle.[15] Thus, although the rolodex information turned out to be erroneous, "it nevertheless may not be disregarded in determining either the legality of the stop or the availability of the good faith exception."[16]

The record in this case reveals the following facts: (1) agent Martinez, who stopped Garcia, had eight years experience as a border patrol agent; (2) the location where the agents first noticed Garcia was close to the Mexican border; (3) the highway being travelled by Garcia was known to be used to smuggle illegal aliens into the United States; (4) the vehicle being driven by Garcia was a type commonly used to

---

**8.** 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

**9.** *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *United States v. Simmons,* 918 F.2d 476, 481 (5th Cir.1990); *Harrison,* 918 F.2d at 472.

**10.** *Harrison,* 918 F.2d at 472.

**11.** 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975). *See also United States v. Boruff,* 909 F.2d 111 (5th Cir.1990), *cert. de-*

*nied,* —— U.S. ——, 111 S.Ct. 1620, 113 L.Ed.2d 718 (1991).

**12.** *United States v. Aldridge,* 719 F.2d 368, 371 (11th Cir.1983).

**13.** 422 U.S. at 884–85, 95 S.Ct. at 2582. "[T]he list does not purport to be exhaustive." *Cortez,* 449 U.S. at 421 n. 3, 101 S.Ct. at 696 n. 3.

**14.** 930 F.2d 396 (5th Cir.1991) (*en banc*).

**15.** *Id.* at 399–401.

**16.** *Id.* at 400.

smuggle aliens; (5) the driver of the Garcia vehicle appeared to be Hispanic; (6) the driver of the vehicle attempted to evade the agents by accelerating to speeds of 75 miles per hour for approximately five to six miles; and, (7) when the driver of the vehicle finally stopped, he stopped in the middle of the highway.

Based on the totality of the circumstances existing at the time the agents stopped the Garcia vehicle, we find that the agents' reliance on the rolodex information was in good faith and objectively reasonable under the facts of this case. We further find that with or without the use of the rolodex information, there existed articulable, reasonable suspicion of criminal activity to stop the Garcia vehicle.

### IV.

■ Garcia also contends that the search of his person and wallet was unreasonable and in violation of the 4th Amendment for the following reasons: (1) the retrieval and initial search of his wallet was not reasonably related to the scope of the search for weapons under *Terry*, which is limited to the protection of the officer from weapons;[17] and, (2) while the agent could question him about his citizenship, probable cause was necessary for a non-consensual search.[18] Garcia argues that the facts surrounding the stop do not establish probable cause for a search and that his refusal to give his name cannot serve as the basis for probable cause. The district court found there was reasonable suspicion to warrant a non-probable cause *Terry* "pat-down" search of Garcia based on Garcia's behavior and the facts associated with the investigatory stop. We agree. The record clearly demonstrates that Garcia was acting in a manner which caused the agents to be concerned for their personal safety.

■ Even though an individual subject to an investigatory stop may refuse to give his or her name,[19] Garcia refused to answer the agent's inquiry as to his citizenship or immigration status. The government has statutory authority to question individuals believed to be aliens about their right to be present in the United States.[20] A person's apparent illegal status in this country may be equivalent to "criminal activity" and can support a finding of reasonable suspicion.[21] The record demonstrates that Garcia's actions provided ample reason for the agents to suspect he was illegally in this country. Also, the search conducted by the agents was limited solely to ascertaining Garcia's citizenship. It is clear that once the Texas driver's license was discovered during the initial search of the wallet, the agents stopped their search of Garcia's wallet. It was only after Garcia refused to disclose his citizenship and to confirm his identity that the agents resumed the search of Garcia's wallet to confirm his name and citizenship status. The actions and inactions of Garcia gave the agents the necessary probable cause to continue the search of his wallet. It was during this second search that the pawn shop receipt was discovered. After the pawn receipt was discovered by the agents, Garcia finally acknowledged his identity and citizenship.

The district court found that the agents did not exceed the scope of the lawful purpose of the search. The record supports this finding. The record also reveals that Garcia was detained for a reasonable period. Once Garcia's identity and citizenship were established, the agents returned his wallet and papers, including the pawn receipt, and allowed him to leave. Consequently, the Court finds that the search of Garcia and his wallet was proper under the facts of this case.

Therefore, the opinion of the district court is AFFIRMED.

---

17. 392 U.S. at 29, 88 S.Ct. at 1884.

18. *Brignoni–Ponce,* 422 U.S. at 881–82, 95 S.Ct. at 2580.

19. *Terry,* 392 U.S. at 34, 88 S.Ct. at 1886 (White, J., concurring).

20. 8 U.S.C. § 1357(a)(1).

21. *Mendoza v. I.N.S.,* 559 F.Supp. 842, 848 (W.D.Tex.1982).