**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas Edward DUCKETT, Defendant-Appellant.**

**No. 77–5741.**

United States Court of Appeals, Fifth Circuit.

Nov. 14, 1978.

Theodore J. Sakowitz, Federal Public Defender, Lurana S. Snow, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Richard A. Woolf, Ralph N. Person, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before COLEMAN, GEE and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Thomas Edward Duckett was found guilty by a jury on each count of a four-count indictment charging him with two counts of possessing stolen mail in violation of 18 U.S.C.A. § 1708, retaining with intent to convert two United States Treasury checks in violation of 18 U.S.C.A. § 641, and obstructing the passage of mail in violation of 18 U.S.C.A. § 1701. On appeal Duckett objects to the trial court's instruction relating to the permissible inferences to be drawn from the possession of recently stolen mail and to the trial court's decision to overrule his motion to suppress. We find no reversible error, and affirm.

At approximately six o'clock a. m. on February 3, 1977, Officer Thomas Guilfoyle, a police officer of the Dade County Public Safety Department, stopped Duckett because the orange-colored van he was driving did not have a visible license plate light, an offense for which Officer Guilfoyle always stopped vehicles. After Duckett was unable to produce an operator's license, a vehicle registration form, or any other means of identification, the officer placed Duckett under arrest. After placing a call for a tow truck, the officer found it necessary to include the vehicle identification number (VIN) on a vehicle tow sheet he was required to complete. While the officer was inspecting the dashboard of the van for the VIN, he discovered two envelopes approximately eighteen inches from the spot where he had expected to find the VIN. Through the transparent window of one of the envelopes, the officer noticed that the name and address of the addressee was not the same as the one given by Duckett, so he seized the envelopes, finding one of them to contain two United States Treasury checks. A follow-up examination that same morning, conducted by Postal Inspector Donald Fulton, verified Officer Guilfoyle's initial conclusion that one of the envelopes contained two United States Treasury checks.

I.

Duckett moved to suppress these items, but the trial court overruled his motion. Duckett contends that the initial entry into the van and seizure of the envelopes, as well as the subsequent opening and examination of the envelopes, constituted warrantless searches in violation of the Fourth Amendment.

Having examined the record before us, we conclude that there was no constitutional violation in this case. It is undisputed that Duckett was unable to produce a valid operator's license, a vehicle registration form, or any proper means of identification. When a radio-check verified that Duckett did not possess a valid Florida operator's license, the officer arrested him, searched him briefly for weapons, and placed him in the rear seat of the patrol car. After Duckett's arrest the officer called to have the van towed in, and pursuant to Dade County Public Safety Department regulations, began to fill out the towing sheet. One of the necessary pieces of information to be included on the sheet was the vehicle identification number. Officer Guilfoyle testified that, on the basis of his experience, VINs are located on the upper left hand corner of the dashboard of 95 per cent of American-made cars after 1968. Knowing the van to be a 1970 model and

expecting to find the VIN on the left hand side of the dashboard, Officer Guilfoyle opened the door of the van, leaned inside, and illuminated the dashboard with his flashlight. Within his immediate eyesight, approximately eighteen inches from the spot where he expected to find the VIN, lay two envelopes, one on top of the other. Through the transparent window of the top envelope, Officer Guilfoyle noticed that the addressee was someone other than Duckett. Suspecting that something was wrong, he therefore seized both envelopes, removed the top one, and discovered inside the second envelope, which had been opened, two United States Treasury checks made payable to someone other than Duckett.

▆▆ We find the circumstances of this case to fall clearly within the "plain view" exception to the warrant requirement. Where the initial intrusion by a police officer is justified, the warrantless seizure of inadvertently-discovered evidence in plain view does not offend the Constitution if it is immediately apparent to the police officer that he has evidence before him. *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In this case there can be no doubt that the officer had a right to be where he was when he came across the two envelopes. Where a legitimate reason exists to do so, the mere checking of a vehicle identification number in order more positively to identify the vehicle is not a "search" within the meaning of the Fourth Amendment, and even should it be, it is a reasonable one. *United States v. Johnson*, 431 F.2d 441 (5th Cir. 1970) (en banc). Thus the defendant conceded at the suppression hearing, as we now hold, that the officer was lawfully present in the van when he came across the two envelopes. Notwithstanding this concession, Duckett contends that two remaining components of the "plain view" exception—inadvertent discovery and the presence of obviously incriminating evidence—are lacking in this case.

▆▆ Initially we note that the district court specifically found that the discovery of the envelopes was inadvertent and that

their incriminating nature was immediately apparent to the discovering officer. We further note that the trial court's findings of fact on a motion to suppress must be accepted unless clearly erroneous. *United States v. Griffin*, 555 F.2d 1323, 1324 (5th Cir. 1977); *United States v. Horton*, 488 F.2d 374, 380 (5th Cir. 1973), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974). A finding is clearly erroneous only when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Based on our review of the record, we unhesitatingly agree with the findings made by the district court and leave them undisturbed.

▆▆ Officer Guilfoyle testified that the two envelopes were within easy eyesight (approximately 18 inches) of the spot where he expected to find the VIN, and that he in no way expected to find the envelopes until he came across them on the dashboard. The fact that the VIN was actually located on the door of the van is irrelevant for our purposes. Thus, we entertain no doubts that the discovery was inadvertent.

▆▆ Duckett also suggests that the incriminating nature of the envelopes could not have been immediately apparent to Officer Guilfoyle, thereby rendering the "plain view" exception inapplicable. *See Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Drew*, 451 F.2d 230, 233 (5th Cir. 1971). In this regard Duckett seeks to make much over Officer Guilfoyle's admission that, at the time he seized the envelopes, he was unsure as to whether they were stolen or lost. Although he was not absolutely certain that the envelopes had been stolen, the officer did know that something was amiss; that the return address on the envelopes was an administrative agency of the State of Florida; that the name of the addressee on the top envelope was someone other than Duckett; and that inside the second envelope were two United States Treasury checks made

payable to someone other than Duckett himself. There is no rule of law which requires an officer to know with absolute certainty that all elements of a putative crime have been completed when he seizes an article which reasonably appears to be incriminating evidence. *United States v. Woods,* 560 F.2d 660, 664 (5th Cir. 1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1452, 55 L.Ed.2d 497 (1978); *United States v. Cecil,* 457 F.2d 1178, 1180–81 (8th Cir. 1972). We thus find that Officer Guilfoyle had probable cause to and did in fact reasonably believe that an offense, the possession of stolen mail, was being committed in his presence. *See United States v. Sedillo,* 496 F.2d 151 (9th Cir.), *cert. denied,* 419 U.S. 947, 95 S.Ct. 211, 42 L.Ed.2d 168 (1974).

As a final point of error, Duckett contends that the opening of the envelopes formerly in his possession without first obtaining a search warrant violated his Fourth Amendment right to be free from unreasonable searches and therefore requires suppression of the two United States Treasury checks obtained from the envelopes and introduced into evidence. Duckett argues that the interdiction against unreasonable searches and seizures extends to mail matter, relying on *Ex parte Jackson,* 96 U.S. 727, 24 L.Ed. 877 (1877). *See also United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). While Duckett is correct in his assertion that Fourth Amendment protections apply to mail matter "intended to be kept free from inspection," 96 U.S. at 733, he nonetheless misapprehends the factual situation in this case. As Officer Guilfoyle and Postal Inspector Fulton explicitly testified, the two Treasury checks were *both* obtained from the *opened* envelope. The examination of two United States Treasury checks contained in an open envelope in proper custody of police authorities is not a "search" within the proscriptions of the Fourth Amendment. *See Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *Ex parte Jackson,* 96 U.S. 727, 24 L.Ed. 877 (1877); *United States v. Hunt,* 505 F.2d 931, 937 (5th Cir. 1974), *cert. denied,* 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975).

## II.

Criminal law inferences which permit the jury to infer an ultimate fact from the existence of a proved fact must pass constitutional muster under the Due Process Clause of the Fifth Amendment. Due process requires a logical nexus between the proved and presumed facts. Although it is not altogether clear how attenuated this logical connection may become before transgressing constitutional boundaries, it can nonetheless be said with certainty that if the presumed fact more likely than not flows from the proved fact, or if the evidence supporting the proved fact is sufficient for a juror to find the presumed fact beyond a reasonable doubt, then the inference meets due process requirements. *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). *See also Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *United States v. Romano,* 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965).

Duckett levels a constitutional attack on the following instruction given by the trial court, arguing that the inferences contained within it fail to meet due process standards:

> Evidence that the defendant was in actual or constructive possession of property which had been recently deposited in the mails in an envelope or container properly addressed, and which was never received by the addressee or by anyone authorized to receive this property on his behalf would ordinarily permit you to draw the inference and find that the property had been stolen from the mails and that the defendant knew that it had been so stolen, unless the defendant's possession is satisfactorily explained.

> I say that you may draw these inferences. You are not compelled to do so. You are the sole judges of the facts in the case.

> .     .     .     .     .

> If, then, you should find beyond a reasonable doubt that the property in question was deposited in the mails in an

envelope or container properly addressed, that it was never received by the addressee or anyone authorized to receive it on his behalf, that thereafter the defendant was in actual or constructive possession of the property, and that no satisfactory explanation of the defendant's possession appears, you may find that the property was stolen from the mails and that the defendant had knowledge that it was so stolen.

■ Two of the essential elements of the offense of unlawful possession under 18 U.S.C.A. § 1708 include proof that the item was stolen from the mails and proof of knowledge by the defendant that the item was stolen. *United States v. Martinez,* 466 F.2d 679, 687–88 (5th Cir. 1972). Duckett asserts that the instruction given permitted the jury to infer, *from the fact of mere possession alone,* both that the mail was stolen and that the defendant knew that it was stolen.

■ Viewing the instruction as a whole, we feel that it is not susceptible of such an interpretation, but to the contrary, simply *combines* two permissive criminal law inferences which we find constitutionally acceptable in a prosecution of this type. The first inference, permitting the jury to infer guilty knowledge from unexplained possession of recently stolen property, clearly comports with due process. *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *United States v. Roberts,* 483 F.2d 226 (5th Cir. 1973). The second inference, allowing the jury to infer that an item has been stolen from the mails upon proof of its due mailing and nonreceipt, goes beyond the scope of the "guilty knowledge" inference approved of in the *Barnes* decision. Nonetheless, it is well settled that evidence of due mailing and nonreceipt will enable a jury to find beyond a reasonable doubt that an item has been stolen from the mails. *United States v. Robinson,* 545 F.2d 301, 303 (2d Cir. 1976); *Blue v. United States,* 528 F.2d 892, 894 n.2 (8th Cir. 1976); *Smith v. United States,* 343 F.2d 539, 544 (5th Cir.), *cert. denied,* 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965).

*See also United States v. Johnson,* 463 F.2d 216, 217 (9th Cir. 1972); *United States v. Mooney,* 417 F.2d 936 (8th Cir. 1969), *cert. denied,* 397 U.S. 1029, 90 S.Ct. 1280, 25 L.Ed.2d 541 (1970). Because this second inference satisfies the reasonable doubt standard, the most stringent standard applied to criminal law inferences, it therefore meets the requirements of due process.

Taken as a whole, the instruction below is a clear and unambiguous combination of two constitutionally permissible inferences, and as such, fails to constitute grounds for reversal.

AFFIRMED.