**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Reginald Antonion HALL,
Defendant–Appellant.**

**No. 79–5513.**

United States Court of Appeals,
Fifth Circuit.

Dec. 10, 1980.

C. S. Williams, Jr., Fed. Public Defender, Pensacola, Fla., for defendant–appellant.

Samuel Ashe Alter, Jr., Asst. U.S. Atty., Pensacola, Fla., for plaintiff–appellee.

Before HENDERSON, POLITZ and WILLIAMS, Circuit Judges.

HENDERSON, Circuit Judge:

Reginald Hall appeals his conviction and sentence for possession of a check stolen from the mail in violation of 18 U.S.C.A. § 1708 (1970).[1] An indictment charging the appellant with one count of forgery and one count of possession of a stolen government check was returned by a grand jury in March, 1979. At the trial in August, 1979, the District Court for the Northern District of Florida entered a judgment of acquittal on the forgery count,[2] but the jury returned a verdict of guilty on the possession count. On appeal Hall contends that the trial court erred in refusing to grant his motion for judgment of acquittal on the possession count based upon insufficiency of the evidence. We affirm the order of the district court.

The government charged Hall with fraudulently endorsing the stolen check with the payee's name and his own name as endorsee and then negotiating the instrument on or about December 1, 1975, at the Pleezing Market in Pensacola, Florida. Four witnesses were called by the government. Mrs. Hazel Carter, the intended recipient of the United States Treasury Check, testified that she regularly received a check, that she did not receive a check for December, 1975, and that she had authorized no one to receive and endorse the check for her. A cashier previously employed at the Pleezing Market for ten months including December, 1975, identified initials. on the check as hers, indicating that she had

1. Title 18 U.S.C.A. § 1708 (1970):

Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein; or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, *as herein described, knowing the same to* have been stolen, taken, embezzled, or abstracted–

Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

2. The record reflects that the district court acquitted on the forgery count because the government failed to show the offense took place on the date alleged in the indictment.

cashed the check from her register. A Secret Service agent stated that he had taken handwriting exemplars from Hall which, in the opinion of a government handwriting expert witness, contained the same handwriting as that on the check. Other government evidence included a certification of the check's mailing and the original check, made out to Hazel Carter in the amount of $157.70 and endorsed with the name of "Hazel Carter" and the name of "Reginald Hall." Due to an illegible bank transit stamp on the check's reverse side, neither the dates of the check's negotiation nor bank clearance could be determined from the instrument itself. Ten handwriting exemplars provided by Hall and two handwriting comparison charts were also introduced by the government.

Hall denied ever possessing, fraudulently endorsing or negotiating the check. Hall elicited testimony that the cashier could not identify him. Neither the phone number, birth date, nor height listed on the check corresponded to Hall's. He could not remember whether he was in or out of jail in December, 1975.

The elements of proof necessary to establish the offense of unlawful possession of a check stolen from the mail in accordance with the provisions of 18 U.S. C.A. § 1708 are (1) the defendant possessed the check, (2) the item was stolen from the mail, (3) the defendant knew the instrument was stolen, and (4) the defendant specifically intended to ·possess the check unlawfully. *United States v. Beecham*, 582 F.2d 898, 910 (5th Cir. 1978) (*en banc*) *cert. denied* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). The government's evidence may be conclusive factual proof of an element of the offense, or it may raise an inference of fact which will be taken as conclusive absent a showing to the contrary by the defendant. Some facts will serve both functions. The signature in his handwriting of the payee's name is an established fact attesting conclusively to a per-

son's prior possession of the check. *United States v. Singleton*, 600 F.2d 553, 555 (5th Cir. 1979); *United States v. Kimbrell*, 487 F.2d 219, 221 (5th Cir. 1973). At the same time, the signature of the payee's name by one other than the payee creates the inference that the forger had the specific intent to use the check in a surreptitious, unlawful manner. *United States v. Hawkins*, 614 F.2d 85, 87 (5th Cir. 1980). Thus, proof of a person's fraudulent endorsement of the payee's name serves to ascertain both his possession and his intent. Recent cases from this circuit hold that from the same forged signature can be drawn the inference that the forger knew the check was stolen, thus satisfying a third element of the offense as well. *Id.*; *United States v. Kimbrell*, 487 F.2d at 221. *See also, United States v. Lewis*, 560 F.2d 901, 904 (8th Cir. 1977). To prove the fourth element, that the item was stolen from the mail, the government need only introduce a certification of mailing and testimony of the addressee that the check was never received. *United States v. Duckett*, 583 F.2d 1309, 1315 (5th Cir. 1978).

Challenges to the constitutionality of these inferences have been unsuccessful. *Barnes v. United States*, 412 U.S. 837, 841–46, 93 S.Ct. 2357, 2360–63, 37 L.Ed.2d 380, 385–87 (1973); *United States v. Duckett*, 583 F.2d at 1314–15. Inferences of intent and knowledge can be drawn from the fact of possession as proved by the fraudulent endorsement without offending the due process clause as long as it can "be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend."[3] The government need not negate all other inferences that could arise from the proved fact. *United States v. Singleton*, 532 F.2d 199, 203 (2d Cir. 1976).

Hall raises three arguments on appeal. He attacks the sufficiency of government evidence respecting his knowledge that the check was stolen from the mail, the

---

**3.** *Leary v. United States*, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57, 82 (1969). Although *Leary* was a marijuana case in which the validity of a statutory presumption was at issue, the *Leary* language has been cited as the

test for constitutionality of criminal law inferences in general. *Barnes v. United States*, 412 U.S. 837, 842, 93 S.Ct. 2357, 2361, 37 L.Ed.2d 380, 385 (1973); *United States v. Duckett*, 583 F.2d 1309, 1314 (5th Cir. 1978).

stolen character of the check, and the date of the offense. More significantly, however, he does not challenge the validity of expert testimony that the fraudulent endorsement of Hazel Carter's name matched handwriting exemplars taken from him by the Secret Service agent. Nor does he deny on appeal the fact of his possession of the check as proved by his handwriting on the back of the instrument. At the trial, Hall had the opportunity to offer evidence in opposition to the government's expert opinion and to impeach the expert's credibility. By failing to challenge the handwriting evidence, Hall permitted the government to make its case, even though he was able to cast doubt on his complicity with evidence that none of the personal information on the check was accurate and that the cashier to whom the check was negotiated could not identify him. Once the handwriting analyses established Hall's endorsement of Hazel Carter's name as a proved fact, the constitutionally permissible inferences that he knew the check was stolen and that he intended to use it unlawfully followed.[4] The inferences need reach no further. Evidence that Hall knew the check was stolen "from the mail" is not required to prove the

unlawful possession offense. *Barnes v. United States*, 412 U.S. at 847, 93 S.Ct. at 2364, 37 L.Ed.2d at 388.

The appellant's contention that the government failed to prove the check was stolen from an authorized mail depository is also without merit. The prosecution introduced evidence that the check was mailed. Mrs. Carter testified that she never received the check which customarily came to her residence mailbox. This circuit has repeatedly held that evidence of due mailing and non–receipt is sufficient to show theft from the mails.[5] *United States v. Duckett*, 583 F.2d at 1315; *United States v. Robinson*, 545 F.2d 301, 303 (2d Cir. 1976); *Smith v. United States*, 343 F.2d 539, 544 (5th Cir.) *cert. denied*, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965).

■ Finally, Hall argues that the government's failure to prove the alleged date hampered his ability to present an alibi.[6] The date of negotiation is not a necessary element of the crime, which is unlawful possession of the stolen check. Yet Hall does not dispute on appeal his possession of the check as demonstrated by the endorsement of the payee's name in what the expert believed to be Hall's handwriting.

4. Hall never protested the constitutionality of the inferences which could be drawn from the fraudulent endorsement of Hazel Carter's name, once the signature was determined to be his handwriting.

5. The appellant makes some reference to a lack of proof that the check was taken from an authorized depository as required by statute. An "authorized depository" can be anything ranging from a regulation mailbox to a clothespin clip on the addressee's doorstep. *United States v. White*, 510 F.2d 488 (10th Cir. 1975); *United States v. Lopez*, 457 F.2d 396, 398 (2d Cir.) *cert. denied*, 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 114 (1972). The thrust of the mailbox requirement is that where mail has already been received by the addressee or where it is misdelivered to one who does not form the intent to steal until he has lawfully removed it from the receptacle, a conviction under § 1708 is not warranted. *United States v. Birnstihl*, 441 F.2d 368, 369 (9th Cir. 1971). There is no evidence of misdelivery in this case. Furthermore, Hazel Carter testified that she never received the check in her mailbox, nor did she give anyone else legal authority to remove her mail. Therefore, the theft necessarily occurred

while the check was still in an authorized depository.

6. An exact date is not listed in *Beechum* along with elements of the offense which must be established. Accordingly, the inability of the government to prove the date of negotiation with precision is not automatically fatal. *Russell v. United States*, 429 F.2d 237, 238 (5th Cir. 1970). Proof that the offense occurred before the return of the indictment and within the statute of limitations is sufficient. *United States v. Vahalik*, 606 F.2d 99, 100 (5th Cir. 1979) *cert. denied* 444 U.S. 1081, 100 S.Ct. 1034, 62 L.Ed.2d 765 (1980). *See* 1 C. Wright, Federal Practice and Procedure § 125 at 247 (1969). The offense could have occurred no earlier than November 28, 1975, the date the check was mailed, so the indictment of appellant on March 13, 1979, was within the five–year statute of limitations set forth in 18 U.S. C.A. § 3282 (1970). The offense could have occurred no later than September, 1976, because the cashier accepting the check worked at the store only ten months, one of which was December, 1975. Thus, the crime necessarily occurred prior to return of the indictment on March 13, 1979.

Variance in, or lack of, proof of the date of offense does not materially prejudice Hall's defense, which should be focused instead on challenging the government's proof of possession. Although the indictment charged that the offense took place on or about December 1, 1975, the jury could conclude that the evidence was sufficient, notwithstanding the government's inability to prove the date alleged, particularly where defense counsel had full opportunity to attack the lack of a precise date. *United States v. Arteaga–Limones*, 529 F.2d 1183, 1193–94 (5th Cir.) *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976). Simple variance between allegation and proof is harmless error as long as (1) the accused is definitely informed of the charges against him so that he can prepare a defense and will not be surprised by the evidence offered at trial, and (2) he is protected against another prosecution for the same offense. *Berger v. United States*, 295 U.S. 78, 83, 55 S.Ct. 629, 630, 631, 79 L.Ed. 1314, 1318 (1935).

The disquieting aspect of this case is not the fragile framework of legal presumptions which were carefully constructed on the factual foundation of fraudulent endorsement of the payee's name. Prior cases have held these presumptions to be reasonable. Any concern can only stem from the fact that identification of the handwriting as Hall's, with its attendant and resultant consequences, rests solely on the opinion evidence of one man. However, the jury has the right to assess the credibility of a witness and the veracity of his opinion. In reviewing the district court's refusal to direct a judgment of acquittal, the court may neither weigh conflicting evidence nor consider the credibility of witnesses. *United States v. Brown*, 587 F.2d 187, 190 (5th Cir. 1979); *United States v. Lopez*, 576 F.2d 840, 843 (10th Cir. 1978). Instead, we must look to all evidence and the inferences to be drawn therefrom in the light most favorable to the government and credibility choices must be made in favor of the jury verdict. *United States v. Maner*, 611 F.2d 107, 109 (5th Cir. 1980). The district judge was entitled to treat the handwriting expert's unrebutted identification as correct.

Reversal of a jury verdict of guilty on appeal from the denial of a motion for judgment of acquittal is not warranted if the jury might have found that the evidence was inconsistent with every reasonable hypothesis of innocence. *United States v. Zicree*, 605 F.2d 1381 (5th Cir. 1979) *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980); *United States v. Marable*, 574 F.2d 224 (5th Cir. 1978). Here the government advanced unrebutted handwriting evidence sufficient to meet the requirements for conviction as a matter of law. A reasonable–minded jury could have concluded there was sufficient evidence of guilt in fact, inconsistent with any reasonable hypothesis of innocence. Once the government's evidence passes this test of legal sufficiency, a judgment of acquittal cannot be entered by the trial judge, even where that course seems "most consonant with the interests of justice." *United States v. Brown*, 587 F.2d at 190, citing *United States v. Weinstein*, 452 F.2d 704, 715 (2d Cir. 1971) *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972). Consequently, the district court's order denying the appellant's motion for judgment of acquittal must be

AFFIRMED.