

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-1997

# United States v. Rosario

Precedential or Non-Precedential:

Docket 96-5286

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

## Recommended Citation

"United States v. Rosario" (1997). *1997 Decisions.* Paper 154.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/154

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 10, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-5286

UNITED STATES OF AMERICA

v.

ALTIGRACI ROSARIO
Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Criminal No. 95-cr-00277)

ARGUED JANUARY 23, 1997

BEFORE: NYGAARD and LEWIS, Circuit Judges
and COHILL,* District Judge.

(Filed July 10, 1997)

Michael V. Gilberti, Jr.
 (ARGUED)
Bennett & Leahey
321 Broad Street
Red Bank, NJ 07701

 Attorney for Appellant

_____

*Honorable Maurice B. Cohill, United States District Judge for the
Western District of Pennsylvania, sitting by designation.

Kevin McNulty
Office of the United States Attorney
970 Broad Street, Room 502
Newark, NJ 07102

Andrew O. Schiff (ARGUED)
Office of the United States Attorney
402 East State Street, Room 502
Trenton, NJ 08608

 Attorneys for Appellee

**OPINION OF THE COURT**

LEWIS, Circuit Judge.

Altigraci Rosario challenges her conviction on two counts of passing United States Treasury checks in violation of 18 U.S.C. § 510(a). Of primary importance on appeal is Rosario's challenge to the sufficiency of the evidence with regard to Count 1 of the indictment. We must decide whether a conviction for passing a treasury check can be sustained based solely on evidence establishing that the defendant possessed the check and that it was "probable" that the defendant had signed the check. We conclude that it can and will affirm.

I.

Altigraci Rosario operated a tax preparation service in Hightstown, New Jersey. Jose Rios, Rosario's nephew by marriage, was employed by Rosario and assisted with her tax preparation service. In February 1993, the U.S. Treasury Department mailed a Treasury check to Angel and Ana Andrade in the amount of $2,996.00. Soon thereafter, the Andrades filed a complaint with the Treasury Department alleging that they had not received the check.

On January 11, 1994, the New Jersey National/ Corestates Bank notified the U.S. Secret Service that Jose Rios had deposited the Andrade check into his account at the bank. That same day, the Secret Service interviewed

2

Rios. During the interview, Rios stated that Rosario had given him the signed check and asked him to cash it. Rios apparently received a $20 fee for executing the transaction.

In September 1993, the U.S. Treasury Department mailed a tax refund check to Ivan Vitiello in the amount of $1,943.03. Subsequently, Vitiello filed a complaint with the Treasury Department alleging that he had not received the check. In his complaint, Vitiello identified Altigraci Rosario as his tax preparer. Vitiello stated that he had authorized Rosario to have the check delivered to her post office box, but he had not authorized her to cash the check.

On May 4, 1994, a U.S. Postal Inspector confirmed that Vitiello's check had been delivered to a post office box registered to Altigraci Rosario and Jose Rios. That same day, the Vitiello check was cashed at Reed's Garage in Cranbury, New Jersey. Employees of Reed's Garage informed the government that Rosario and Rios had cashed the Vitiello check. Sometime later, the government identified Rosario's fingerprint on the check.

On November 18, 1994, the government filed a two-count misdemeanor complaint against Rosario, charging her with negotiating two checks bearing forged endorsements in violation of 18 U.S.C. § 510(a) and § 510(c). Count 1 of the indictment related to the Andrade check and Count 2 related to the Vitiello check. After a one-day jury trial, Rosario was convicted on both counts.1

At trial, Angel and Ana Andrade testified that they had never met Rosario, used her service or authorized her or anyone else to endorse their check. Rios, the prosecution's chief witness, testified that Rosario had given him the Andrade check, which had been endorsed, along with a form of identification of the payee. Rosario asked Rios to cash the check, informing him that the payee did not have a bank account and therefore could not cash the check. (Apparently, Rios had a substantial amount of cash in a safe in the office due to a $20,000 personal injury settlement.)

_____

1. Because Rosario does not challenge the sufficiency of the evidence with regard to Count 2, relating to the Vitiello check, we will not discuss the proof offered at trial with regard to that count.

3

Rios further testified that he had not met the persons whom Rosario told him had given her the check. Indeed, Rios stated that he "didn't even see the people." App. at 47A. According to Rios, he took the Andrade check from Rosario, photocopied the identification and gave Rosario the cash, less a $20 fee. Rios stated that he did not actually see Rosario hand the cash over to any person who might be associated with the check, but that he did see her "talking to someone." App. at 49A.

Finally, Rios testified that after the bank informed him that the Andrade check had been reported stolen, he looked for the photocopy that he had made of the identification but could not find it. When he informed Rosario about the check, Rios acknowledged that she seemed "genuinely surprised" that the check had been reported stolen. App. at 54A.

The government supplemented the testimony of Rios with the testimony of a handwriting expert, Secret Service document examiner Jeffrey Taylor. After comparing the signature for Ana Andrade that appeared on the check with a known sample of Rosario's handwriting, Taylor testified that Rosario "probably" had forged the check herself -- that is, it was "more likely than not" that she had done so. Essentially, the testimony of Rios, Taylor and the Andrades constituted the entirety of the government's case on Count 1 of the indictment.

After the jury rendered its verdict, Rosario filed a Rule 29 motion for judgment of acquittal on Count 1 with the magistrate judge, arguing, inter alia, that the evidence was insufficient to sustain a conviction.[2] The magistrate judge denied Rosario's post-trial motions. See United States v. Rosario, Crim. No. 94-5050K-01 (D.N.J. May 9, 1995).[3] On June 2, 1995, the magistrate judge sentenced Rosario to eight months in prison on both counts to be served

_____

2. Rosario also moved for a new trial on both counts based upon the magistrate judge's allegedly erroneous ruling on her motion in limine.

3. The magistrate judge had jurisdiction to serve as trial judge over Rosario's trial pursuant to 18 U.S.C. § 3401, which allows a magistrate judge to try and sentence persons accused and convicted of misdemeanor offenses.

4

concurrently.4 At the time of sentencing, Rosario was already serving a one-year sentence for an unrelated bribery conviction.

Rosario then appealed the magistrate judge's decision to the district court pursuant to 18 U.S.C. § 3402.5 The district court affirmed Rosario's conviction and sentence in all respects. See United States v. Rosario, Crim. No. 96-277 (D.N.J. April 3, 1996). On this appeal, Rosario's primary challenge to her conviction is that the evidence offered at trial was insufficient to support the jury's conviction on Count 1.6

The district court had jurisdiction over the criminal proceedings pursuant to 18 U.S.C. § 3231. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

II.

Our review of a sufficiency of the evidence challenge is guided by strict principles of deference to a jury's verdict. United States v. Anderskow, 88 F.3d 245, 251 (3d Cir.), cert. denied, 117 S. Ct. 613 (1996). We must view the evidence in the light most favorable to the government and must sustain a jury's verdict if "a reasonable jury believing

_____

4. Rosario was also ordered to pay restitution in the amounts of $2,996.00 and $1,934.00 to the victims and to pay aggregated special assessments of $50.00.

5. That statute provides:

In all cases of conviction by a United States magistrate an appeal of right shall lie from the judgment of the magistrate to a judge of the district court of the district in which the offense was committed.

18 U.S.C. § 3402.

6. Rosario also raises again the argument that the magistrate judge erred by denying her motion in limine to exclude the admission of her prior bribery conviction. We decline to address the merits of the magistrate's in limine ruling because, by not testifying at trial, Rosario has failed to preserve this issue for appeal. See Luce v. United States, 469 U.S. 38 (1984) (holding that in order to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify); United States v. Moskovits, 86 F.3d 1303, 1305-06 (3d Cir. 1996) (same), cert. denied, 117 S. Ct. 968 (1997).

5

the government's evidence could find beyond a reasonable doubt that the government proved all the elements of the offenses." United States v. Salmon, 944 F.2d 1106, 1113 (3d Cir. 1991). Accordingly, "[a] claim of insufficiency of the evidence places a very heavy burden on the appellant." United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995).

Rosario was convicted of check forgery under 18 U.S.C. § 510(a)(2), which provides:

(a) Whoever, with intent to defraud--

. . . .

(2) passes, utters, or publishes, or attempts to pass, utter, or publish, any Treasury check or bond or security of the United States bearing a falsely made or forged endorsement or signature;

shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 510(a)(2).

At trial, the magistrate instructed the jury that, under the statute, the government was required to prove the following elements beyond a reasonable doubt:

(1) that the defendant passed or attempted to pass a U.S. Treasury check,

(2) that the check bore a forged or falsely made endorsement,

(3) that the defendant passed the check with inten t to defraud, and

(4) that the defendant acted knowingly and willfully.

Rosario, Crim. No. 94-5050K-01, slip op. at 7.

Rosario contends that the government failed to meet its burden on elements (2), (3) & (4). Specifically, she argues that Rios's testimony establishing that she possessed the check was insufficient to corroborate the testimony of the handwriting expert that she probably forged the check.

As noted earlier, Taylor testified that it was "probable" that Rosario had forged the check. "Probable" is a term of

6

art used by Secret Service document examiners. The "probable" category falls exactly in the middle of the six-point spectrum between "positive identification" and "positive elimination." Thus, handwriting experts will use the term "probable" to describe

times when the evidence falls considerably short of the "virtually certain" category and yet still points rather strongly toward the suspect, i.e., there are several significant similarities present between the questioned and known writings, but there are also a number of irreconcilable differences and the examiner suspects that they are due to some factor but cannot safely attribute the lack of agreement to the effect of that factor.

Thomas V. Alexander, Definition of Handwriting Opinions, App. at 37A.

The government concedes that Taylor's testimony alone would be insufficient to sustain a conviction under § 510(a). The government argues, however, that Taylor's testimony that Rosario probably forged the check, coupled with Rios's testimony that Rosario had given him the check, would allow the jury to make the inference that Rosario had forged the check. Moreover, according to the government, once the jury concluded that Rosario had forged the check, it could logically conclude that she had done so knowingly and willfully and with intent to defraud. We agree. By establishing that Rosario possessed the check, and thus had the opportunity to forge it, the government provided validation for Taylor's testimony that Rosario had probably forged the check.7

---

7. Once the jury was provided with enough information to conclude that Rosario had forged the check, it certainly could have inferred that she acted knowingly and willfully and with the intent to defraud. Of course, the requisite state of mind elements only follow if the jury believed that Rosario did, in fact, forge the check. See, e.g., United States v. Hall, 632 F.2d 500, 503 (5th Cir. 1980) (holding that once forgery was established, inferences of knowledge and unlawful intention followed). Given the Andrades' testimony that they did not know Rosario nor authorize her to endorse the check, the jury could have assumed that Rosario forged the endorsement of the check with the requisite intent to defraud.

7

In reaching this conclusion, we are persuaded by the reasoning put forth in United States v. Richardson, 755 F.2d 685 (8th Cir. 1985) (per curiam) and United States v. Rivamonte, 666 F.2d 515 (11th Cir. 1982) (per curiam). In both Richardson and Rivamonte, as here, the handwriting expert's testimony established only that it was "probable" that the defendant had forged the check.

In Richardson, the court upheld a check forgery conviction challenged on insufficiency grounds. The handwriting expert testified that Richardson had "probably" signed the check. This testimony was supplemented by evidence that Richardson had access to a key to the victim's home, that she had made a deposit in the exact same amount as the stolen check, and that her fingerprints were on the stolen check. In upholding the conviction, the court concluded that this was "ample evidence to support the verdict." Richardson, 755 F.2d at 686.

Similarly, in Rivamonte, the court upheld a check forgery conviction based on the following evidence: a handwriting expert's testimony that the defendant had "probably" signed the check; the defendant's fingerprints were on the check; the defendant's account number was written on the back of the check; and the payees' names were written on the defendant's pre-encoded deposit slip. Rivamonte, 666 F.2d at 516-17. The court held that "a jury reasonably could conclude that this evidence is inconsistent with every reasonable hypothesis of appellant's innocence." Id. at 517.

Although in Richardson and Rivamonte the government offered slightly more circumstantial evidence than was offered at Rosario's trial, we are nevertheless convinced that the evidence establishing that the respective defendants had possessed the check was of primary significance in those cases. Our conclusion is bolstered by the Eleventh Circuit's post-Rivamonte decision in United States v. Henderson, 693 F.2d 1028 (11th Cir. 1982). In Henderson, the court reversed a check forgery conviction based solely on ambiguous handwriting testimony and evidence showing that the defendant's wife had cashed the stolen check. The government offered no evidence that Henderson had ever possessed the check. Distinguishing Rivamonte, the court noted:

8

Although both Rivamonte and the present appeal had handwriting experts testify that the respective defendants "probably" endorsed the checks, the additional evidence in Rivamonte constituted sufficient evidence to sustain a conviction. The fingerprints and the defendant's account number support the conclusion drawn by the handwriting expert in Rivamonte.

Henderson, 693 F.2d at 1032.

Here, although Rosario's fingerprints were not found on the check, Rios's testimony established that Rosario was in possession of the check. Thus, Rios's testimony that Rosario possessed the check provided the same corroboration for the handwriting expert's testimony that the fingerprint evidence in Rivamonte and Richardson did. See also United States v. Chatman, 557 F.2d 147, 148 (8th Cir. 1977) (per curiam) (upholding check forgery conviction because accessibility of payee's mailbox to defendant provided corroboration for less than conclusive expert handwriting testimony).

In our view, because the evidence established that Rosario did, in fact, possess the check, the jury could have used that fact to corroborate the handwriting expert's testimony that she had probably forged the signature on the check. While neither of these factors independently would be sufficient to support a conviction, taken together they are sufficient to support the jury's guilty verdict.[8]

_____

8. We are not persuaded by Rosario's attempt to characterize Rios's testimony as "exculpatory" for her. Using Rios's testimony, Rosario implies that she merely unknowingly passed the forged check to Rios and then passed along the cash to the person or persons who brought in the check. Rosario finds further support for her theory from Rios's testimony that she was "genuinely surprised" when he reported that the check was stolen.

As the district court pointed out, however, the jury was not required to believe that Rosario made any of the arguably exculpatory out-of-court statements to Rios. Rosario, Crim. No. 96-277, slip op. at 6. And, in any event, the statements she relies on are not inconsistent with guilt. Simply stated, the jury had no reason to believe that Rosario was being truthful with Rios. Indeed, the jury could have just as well believed that

9

Finally, we acknowledge that this is a close case. Indeed, were we sitting as triers of fact, we very well may have come to a different conclusion than the jury did here. Nevertheless, we cannot say that there was insufficient evidence to support the jury's verdict. Accordingly, we affirm Rosario's conviction.

---

Rosario's statements to Rios served to deceive him into believing that she had unwittingly passed the forged check. After all, it certainly served Rosario's interests for Rios to believe the check transaction was legitimate because Rios may have been less willing to cash the check had he known it was stolen.

10

NYGAARD, Circuit Judge, dissenting.

The government argues that the combination of wholly ambiguous testimony from a handwriting expert and equivocal testimony from a witness receiving favorable treatment from the government is sufficient to support the conviction of Altigraci Rosario for passing a United States Treasury check. The majority accepts this argument. I do not; hence, I dissent.

To convict Rosario of check forgery under 18 U.S.C. § 510(a)(2), the government was required to prove four elements beyond a reasonable doubt: (1) that the check was a U.S. Treasury check; (2) that the check bore a forged or falsely made endorsement; (3) that Rosario passed the check with intent to defraud; and (4) that Rosario acted knowingly and willfully. There was no direct evidence adduced at trial to satisfy the government's burden on elements (2), (3) and (4). Recognizing this, the government nonetheless asks us to cobble together a series of inferences to support the jury's verdict. It argues that, taken collectively, the testimony of Taylor, the handwriting expert, and Rios, the man who negotiated the stolen check, are sufficient to permit the jury to infer that Rosario forged the check. Building on this inference, it then claims that the jury could draw the further inferences that Rosario possessed the requisite knowledge, willfulness and intent to defraud necessary to satisfy the remaining elements of the charged offense. In my view, these "inferences" do no more than permit the jury to speculate that Rosario is guilty, especially in light of the weak testimony from which these inferences are drawn.

Jeffrey Taylor, the government's handwriting "expert," could only testify that Rosario "probably" signed the name "Ana Andrade" to the back of the Andrades' check. The trial record shows, however, that Taylor's testimony was even more ambiguous. Indeed, under cross-examination Taylor conceded that there were a number of "irreconcilable differences" between the Ana Andrade signature on the check and Rosario's sample signature. App. at 35A. Moreover, Taylor candidly admitted that there was "some doubt" in his mind as to whether Rosario signed Ana Andrade's name on the check. App. at 35A-36A.

11

Significantly, Taylor also acknowledged on direct examination that he "found no evidence that [Rosario] wrote the remaining signature [Angel Andrade's] on that check." App. at 32A. Taylor's concessions make his already equivocal conclusion that Rosario "probably" forged Ana Andrade's name on the check even less reliable. I would conclude that inferences drawn from such clearly ambiguous testimony cannot possibly satisfy the government's burden of establishing beyond a reasonable doubt that Rosario forged Ana Andrade's signature on the check.

Recognizing the inherent weakness of Taylor's vague opinion, the government would have us rely on the testimony of Rios for support that Rosario forged the check. Rios's testimony, it argues, establishes that Rosario both possessed and had the opportunity to forge the check, thereby allowing the jury to infer that Rosario did, in fact, forge Ana Andrade's signature on the check. By presenting evidence that Rosario possessed the check and had the opportunity to sign it, the government contends that it provided validation for Taylor's equivocal opinion that Rosario probably forged the check. In support of its argument, the government relies primarily on two cases where courts affirmed forgery convictions based in part on testimony from a handwriting expert indicating that the defendant had "probably" forged the stolen check. See United States v. Richardson, 755 F.2d 685 (8th Cir. 1985) (per curiam); United States v. Rivamonte, 666 F.2d 515 (11th Cir. 1982) (per curiam).

In my view, however, reliance on Richardson and Rivamonte is imprudent for a number of reasons. First, notwithstanding the assertion that the government offered only "slightly" more circumstantial evidence in Richardson and Rivamonte than that adduced here, Maj. Opinion at 8, the records in those cases demonstrate that there was ample evidence tending to establish all elements of those check forgery convictions.

For example, in Richardson, the court affirmed a check forgery conviction where the handwriting expert's testimony was complemented by evidence showing that Richardson had a key to the home where the check was stolen,

12

Richardson's fingerprints were found on the stolen check, a stolen deposit slip was used to cash the check, and Richardson had made a deposit in the exact same amount as the stolen check during the time period in which the stolen check was cashed. 755 F.2d at 686.

Similarly, in Rivamonte, the court affirmed a check forgery conviction where the expert's opinion was complemented by evidence showing that Rivamonte's fingerprints and palmprints were found on the check, the defendant's account number was written on the back of the check, the payee's names were written on Rivamonte's pre-encoded deposit slip, and a deposit was made in the defendant's account on the same day that the stolen check was negotiated. 666 F.2d at 516-17.

In each case, the government proffered strong circumstantial evidence specifically related to the respective defendants' possession of the stolen checks, their intent to defraud and their states of mind. Such was not the case here, where the government, lacking sufficient evidence to establish any of these elements beyond a reasonable doubt, was forced to ask the jury to speculate that Rosario forged the check, passed the check with intent to defraud, and acted with requisite knowledge and willfulness.

I do not believe we can contort Richardson and Rivamonte to support the proposition that testimony from a handwriting expert indicating that a defendant "probably" forged a stolen check in conjunction with evidence showing possession of the stolen check by the defendant constitutes sufficient evidence to affirm a conviction under 18 U.S.C. § 510(a)(2). Simply stated, there is no such baseline position established in the case law. Instead, Richardson and Rivamonte suggest that an "expert" opinion that the defendant probably forged the check, coupled with sufficient additional circumstantial evidence demonstrating possession, willfulness, knowledge and intent to defraud, is necessary before a conviction will be affirmed.

United States v. Hall, 632 F.2d 500 (5th Cir. 1980), is not to the contrary. In Hall, the court held that once forgery is conclusively proven, inferences of fact regarding possession, intent and knowledge can be permissibly drawn by the

13

government. Id. at 502. The handwriting expert in Hall, however, provided an unequivocal opinion that the defendant had forged the payee's name on the stolen check, thereby providing the government with conclusive factual proof of the forgery element of the offense from which inferences tending to establish the other elements of the offense could be drawn. Id. Here, in contrast, the government has offered only ambiguous, inconclusive testimony regarding the forgery element of the offense. As such, there is no conclusively proven fact of forgery from which the government could draw inferences tending to establish the other elements of the offense of conviction.

My interpretation of the case law is supported by the post-Rivamonte decision in United States v. Henderson, 693 F.2d 1028 (11th Cir. 1982), which, in my view, does not bolster the government's argument. In Henderson, the court reversed a check forgery conviction based on ambiguous handwriting testimony and circumstantial evidence tending to show that the defendant's wife had cashed the stolen check. In reaching its decision, the court reasoned as follows:

Although it is apparent that someone endorsed Mr. Moore's signature on the back of the treasury check, the evidence was not sufficient for a fair jury to conclude beyond a reasonable doubt that Mr. Henderson was the endorser. The evidence, because it was circumstantial required that the jury draw an inference that because Ms. Henderson used the defendant's car to cash the check, and because Ms. Henderson did cash the check, the defendant must have signed the check. This simply does not follow. It is unreasonable to infer Mr. Henderson's guilt based upon the actions of his wife. Yet, it is apparent from the evidence that there was little else upon which to base a conviction. . . . Although circumstantial evidence is testimony to the surrounding facts and circumstances of the point at issue, they must at some point connect, to allow the trier of fact to draw the inference that the fact asserted is true.

Id. at 1031 (internal citation omitted). The court then proceeded to distinguish Rivamonte on the basis of the

14

strength of the additional evidence offered by the government in that case. As the Henderson court concluded: "In the present case, the additional evidence, together with the handwriting expert's `probable' testimony, is not sufficient." 693 F.2d at 1032. Significantly, there is nothing in the Henderson decision to suggest that the court viewed the failure of the government to produce evidence showing that Mr. Henderson possessed the stolen check as determinative of the sufficiency of the evidence. Rather, the Henderson court reviewed the proffered evidence in its entirety and determined that there was insufficient evidence supplementing the ambiguous handwriting testimony to permit a reasonable jury to conclude beyond a reasonable doubt that Mr. Henderson was guilty of the offense of conviction.1

Notwithstanding the absence of any legal precedent for its conclusion that ambiguous handwriting evidence coupled with evidence of possession constitutes sufficient evidence to affirm a conviction under § 510(a), the government speciously reasons that Rosario's conviction was proper because Rios's testimony that Rosario possessed the check provided the same corroboration for the handwriting expert's testimony that the fingerprint evidence in Rivamonte and Richardson did. What this bit of forensic gymnastics neglects to explain, however, is that the government's fingerprint expert was unable to identify any finger or palm prints belonging to Rosario on the Andrade check. App. at 42A-43A. Thus, the government was forced to rely on Rios's testimony as the "equivalent" of fingerprint evidence precisely because there was no fingerprint evidence available to support the conclusion that Rosario forged Ana Andrade's name on the back of the stolen check. Rather than lend credibility to the ambiguous handwriting testimony offered in this case, the government's reliance on Rios's testimony highlights the dearth of evidence offered by the government to meet its burden of proof. Simply stated,

_____

1. The majority correctly states that in Henderson the government offered no evidence that Mr. Henderson had ever possessed the stolen check. Maj. Opinion at 8. I note, however, that the government similarly failed to offer any evidence specifically relating to Mr. Henderson's intent to defraud, knowledge or state of mind.

15

aside from Rios's testimony the government failed to adduce any additional evidence to validate Taylor's equivocal conclusion that Rosario signed the stolen check. Lacking further additional evidence like that offered in the Rivamonte and Richardson cases (e.g., fingerprints, palmprints, pre-coded deposit slips), I fail to understand how Rios's testimony could possibly transform Taylor's ambiguous conclusion into factual proof sufficient to establish Rosario's guilt beyond a reasonable doubt.

Finally, I am concerned because parts of Rios's testimony directly contradict inferences that the jury was supposed to have drawn from Rios's testimony. For instance, on cross-examination Rios testified that Rosario did not know that the check was stolen. App. at 52A. Such testimony clearly undercuts the idea that the jury could infer that Rosario had the requisite knowledge and intent to defraud necessary to support a conviction under § 510(a)(2). Moreover, it also puts the majority in the awkward position of relying on Rios's testimony in order to bolster the inferences that Rosario possessed and forged the stolen check, but ignoring Rios's testimony in order to draw the inferences that Rosario had the requisite knowledge and state of mind necessary to support her conviction. Such inconsistencies further reinforce my conclusion that the evidence proffered in this case permitted the jury to do little more than speculate as to Rosario's guilt.

In summary, I believe that the evidence adduced by the government at trial falls far below the horizon of certainty we require in criminal prosecutions and is not sufficient to convict Rosario beyond a reasonable doubt. Handwriting analysis is at best an inexact science, and at worst mere speculation itself. See, e.g., D. Michael Risinger et al., Exorcism of Ignorance as a Proxy for Rational Knowledge: The Lessons of Handwriting Identification "Expertise", 137 U. Pa. L. Rev. 731, 739 (1989) (reporting that "[f]rom the perspective of published empirical verification, handwriting identification expertise is almost nonexistent"). As such, I do not believe that wholly ambiguous testimony from a handwriting "expert" and selected testimony from a witness receiving favorable treatment from the government can

16

satisfy the government's burden of proof. Accordingly, I would reverse Rosario's conviction.

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals
for the Third Circuit</u>

17