NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THIRD CIRCUIT

_____

No. 11-1383
_____

UNITED STATES OF AMERICA

v.

STEPHEN M. ULRICH,
                              Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-10-cr-00320-001)
District Judge:  Hon. Sylvia H. Rambo

_____

Submitted Under Third Circuit LAR 34.1(a)
September 15, 2011

Before:  RENDELL, JORDAN and BARRY, *Circuit Judges*.

(Filed: September 16, 2011)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Stephen M. Ulrich appeals an order of the United States District Court for the Middle District of Pennsylvania affirming the Judgment of Conviction and sentence entered by a Magistrate Judge following a bench trial. The Magistrate Judge found Ulrich guilty of disorderly conduct in violation of 18 PA. CONS. STAT. § 5503(a)(1), as incorporated by 18 U.S.C. §§ 7, 13, and sentenced him to 90 days' probation, $2,731 restitution, and a $100 special assessment, all stemming from his behavior at a United States Post Office in June 2009. For the reasons that follow, we will affirm.

I.    **Background**

Residents of New Buffalo, Pennsylvania, do not have mail delivered to their homes but instead must retrieve their mail from assigned post office boxes at the New Buffalo Post Office. Prior to June 2009, it was common for residents to obtain their mail by asking a clerk at the Post Office to retrieve their mail from their assigned boxes and hand it to them over the counter. This allowed the residents to avoid the minor inconvenience of walking to the portion of the Post Office where the boxes are located and opening them with a key. However, in June 2009, in response to a complaint that a resident's mail had been mistakenly given to someone else, clerks began requiring residents to retrieve their mail themselves.

Ulrich's family first learned of that change in policy during the second week of June 2009. Early in the week, Ulrich's children asked a postal clerk to hand the family's mail to them, but that was refused under the new policy. Ulrich's wife later made the same request and was also denied. Ulrich himself then went to the Post Office and

2

demanded his mail. The clerk behind the counter, 64-year-old Carol Bonsall, refused to retrieve it for him, citing the new policy.

Ulrich began to shout and pound his fist on the counter. He then threatened to jump over the counter into the area of the Post Office restricted for employee use and to retrieve the mail himself, if Bonsall would not give him the mail. She refused, and, after further words, Ulrich went over the counter. In doing so, he knocked a container of pens from the countertop and it struck Bonsall on the head, twisting and knocking off her glasses, as well as leaving a red mark on her temple. Bonsall exclaimed, "You know you hit me," as Ulrich retrieved his mail and left the Post Office. (App. at 41, 56)

Bonsall then called her supervisor and the state police. The supervisor instructed Bonsall to go to the hospital for an evaluation. She did so, and the hospital staff evaluated Bonsall, even administering a Computed Tomography scan, but found no lasting injury.

In February 2010, Ulrich was indicted in the Middle District of Pennsylvania for disorderly conduct in violation of 18 PA. CONS. STAT. § 5503(a)(1) and 18 U.S.C. §§ 7, 13.[1] After a one-day bench trial, the Magistrate Judge found Ulrich guilty of disorderly conduct. Ulrich then filed a motion for acquittal, which was denied by the Magistrate

---

[1] Conduct on United States property that would violate the law of the state in which the property is situated if committed within the state's jurisdiction is punishable as a violation of federal law pursuant to 18 U.S.C. § 13(a). United States Post Offices are among the classes of United States property to which 18 U.S.C. § 13 applies. *See* 18 U.S.C. § 7(3) (providing that the "territorial jurisdiction of the United States" to which 18 U.S.C. § 13 applies includes "[a]ny lands reserved or acquired for the use of the United States").

3

Judge.  On November 2, 2010, following a hearing in front of the Magistrate Judge, Ulrich was sentenced to 90 days' probation and ordered to pay $2,731 restitution to cover Bonsall's medical expenses related to the incident.  The District Court affirmed the judgment and this appeal followed.

## II.    Discussion

On appeal, Ulrich argues that the Magistrate Judge erred in finding him guilty of disorderly conduct under 18 PA. CONS. STAT. § 5503(a)(1) because he had not engaged in fighting, threatening, violent or tumultuous behavior, as required by statute.  He also argues that the Magistrate Judge erred in awarding restitution for Bonsall's medical expenses because Bonsall suffered no bodily injury, which, he argues, made the medical exam unnecessary and restitution inappropriate.  We address those contentions in turn.[2]

### A.    *Disorderly Conduct*

Under Pennsylvania law, "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof,

---

[2] The Magistrate Judge had jurisdiction pursuant to 18 U.S.C. § 3401.  The District Court had jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3402.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  *See United States v. Rosario*, 118 F.3d 160, 162 (3d Cir. 1997).

With respect to the conviction, we review the factual findings of the Magistrate Judge for clear error and exercise plenary review of its legal determinations.  *United States v. Marcavage*, 609 F.3d 264, 271 (3d Cir. 2010).  Under a clear error standard, we may not reverse if the court's "account of the evidence is plausible in light of the record viewed in its entirety."  *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985).  We also view the facts in the light most favorable to the government. *Marcavage*, 609 F.3d at 269 n.1.

As to the restitution that was ordered, "[w]e exercise plenary review over whether an award of restitution is permitted under law, but we review specific awards for abuse of discretion."  *United States v. Graham*, 72 F.3d 352, 355 (3d Cir. 1995).

4

he: engages in fighting or threatening, or in violent or tumultuous behavior." 18 PA. CONS. STAT. § 5503(a)(1). The focus is on the defendant's behavior, not the public impact of that behavior. *Commonwealth v. Fedorek*, 946 A.2d 93, 101 (Pa. 2008).

The statute defines "public" as "affecting or likely to affect persons in a place to which the public or a substantial group has access," including "places of business" and "any premises which are open to the public." 18 PA. CONS. STAT. § 5503(c). For there to be "public inconvenience," there need not be multiple persons affected by the conduct – one affected person will suffice. *See Fedorek*, 946 A.2d at 100 (holding that "when an offender engages in fighting or threatening, or in violent or tumultuous behavior in a public arena, even when that conduct is directed at only *one other person*, the offender may be subject to conviction for disorderly conduct" (original emphasis)). A person has the state of mind necessary to commit disorderly conduct when he acts with a reckless disregard for the risk of public inconvenience, annoyance, or alarm, regardless of whether he specifically intends to cause public inconvenience, annoyance, or alarm. *Commonwealth v. Maerz*, 879 A.2d 1267, 1269 (Pa. Super. Ct. 2005).

Viewing the evidence in the light most favorable to the government, we are satisfied that there was sufficient evidence for the Magistrate Judge to find Ulrich guilty of disorderly conduct. Ulrich threatened to enter and then did enter a restricted area in a public building, despite Bonsall's protestations. In the process, his loud, tumultuous conduct caused violent contact with Bonsall. The evidence further supports the conclusion that he committed those acts with, at a minimum, reckless disregard for

5

whether he was creating a risk of public inconvenience, annoyance, and alarm. Accordingly, we will affirm the conviction.

### B. *Restitution*

A court may order a defendant to pay restitution when his offense results in "bodily injury to a victim." 18 U.S.C. § 3663(b)(2). Where the restitution award is based on such injury, the court may set the amount of restitution "equal to the cost of necessary medical and related professional services." *Id.* § 3663(b)(2)(A). Ulrich argues that restitution is inappropriate because Bonsall sustained no "bodily injury" and thus incurred no "necessary" medical expenses.

Section 3663 does not define "bodily injury." However, that term is elsewhere defined in Title 18 as "a cut, abrasion, bruise, burn, or disfigurement; physical pain; illness; impairment of the function of a bodily member, organ, or mental faculty; *or any other injury to the body, no matter how temporary*." *E.g.*, 18 U.S.C. §§ 831(f)(5), 1365(h)(4), 1515(a)(5), & 1864(d)(2) (emphasis added).

Applying that definition here, it is clear that Bonsall sustained "bodily injury." She was struck in the head with such force as to twist her glasses and knock them off her face and to leave a red mark on her temple. Though apparently temporary in effect, the blow to her head and accompanying mark plainly fit within a definition encompassing "any … injury to the body, no matter how temporary."[3]

---

[3] As both parties discuss, the Sentencing Guidelines define "bodily injury" as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1 cmt. n. 1(B). Because it would not have been unreasonable for the District Court to decide that medical

6

We also conclude that Bonsall's medical expenses were "necessary." The District Court observed that, "[w]hile the outward signs of injury may not appear to be very significant, it is possible for significant internal injuries to be present." *United States v. Ulrich*, 2011 WL 398078, at *2 (M.D. Pa. Feb. 2, 2011). Because that is true, particularly with a head injury, it is not difficult to reach the conclusion that treatments and tests aimed at discovering the extent of an injury, which, in turn, inform subsequent care, are "necessary." That the tests here revealed no injury requiring further care is of no moment. Restitution was appropriate, and the Magistrate Judge did not abuse his discretion in awarding it in an amount sufficient to cover Bonsall's medical expenses.

## III. Conclusion

For the foregoing reasons, we will affirm the District Court.

---

attention would ordinarily be sought for a 64-year-old woman who had just received a blow to her head significant enough to knock off and twist her glasses as well as leave a red mark on her temple, our conclusion with respect to bodily injury would be the same using that definition.