NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 09-1628
———

UNITED STATES OF AMERICA

v.

KEVIN HILLER
also known as
KEV
also known as
KEVIN HILLER
also known as
KEVEN HILLER

Kevin Hiller,
    Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2:06-cr-00096-004)
District Judge: Honorable Eduardo C. Robreno
———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 6, 2011

Before: HARDIMAN, BARRY, and VAN ANTWERPEN, *Circuit Judges*.

(Filed: December 6, 2011)
———

OPINION OF THE COURT
———

VAN ANTWERPEN, *Circuit Judge*.

A jury found Kevin Hiller guilty of conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a); interference with interstate commerce by robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; and carrying/using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2. While Hiller indicated his intent to file a Rule 29(c) motion for judgment of acquittal, he never did so. Hiller now appeals, challenging the sufficiency of the evidence against him on all three counts. For the reasons that follow, we will affirm.

**I.**

Because we write solely for the parties, we recount the facts and proceedings only to the extent required for resolution of this appeal. Walter Leon, Pedrito Moreta, and a man named "Kev," had a plan to rob a Brinks armored truck at a bank in Cheltenham Township, Pennsylvania. Leon had a gun, and was to point it at the Brinks guard after he exited the vehicle; Moreta had a pepper spray can and was to spray it in the guard's eyes while Leon had him under control with the gun; and, with the guard unable to see, Leon and Moreta would run off with the bags of currency to Kev's red jeep.

On the morning of August 24, 2005, the three attempted to execute the plan. When the guard walked out of the bank with several bags of currency, Leon approached him from behind, pointed a gun to his head, and said "don't move." When the guard reached for his holster, Leon told him "don't do it." Moreta then bicycled over and pepper sprayed the guard in the face; Leon and Moreta reached for the currency and fled.

2

The guard, who was not blinded by the spray, fired several shots at the fleeing men, causing Leon and Moreta to drop the money prior to reaching Kev's red jeep. Kev then drove the two men to Vitaly Liberman who was waiting in another car at a separate location.

On the night before this botched robbery, Leon and Moreta slept at Liberman's house. After they woke, Liberman drove the two men to "Kev's" apartment, where he dropped them off. This was the first time that Leon had met Kev. Liberman, however, knew Kev to be the defendant, Hiller—a man he had worked and socialized with during that summer. Prior to leaving, Liberman listened to Kev instruct the two men on how they would pull off the robbery. After Liberman left, Kev applied black paint to the two men's faces and gave Leon a gun and Moreta a pepper spray can. Kev then drove Leon to the bank, with Moreta following behind on a bicycle.

This was the second time that Kev had attempted to rob the Brinks truck that August. Earlier in the month, Kev, Liberman, and Moreta had attempted to carry out a similar plan at the same bank. As with the robbery at issue, Kev provided the gun, pepper spray, and getaway car. The plan was thwarted, however, when Moreta failed to notice the guard return from the bank.

## II.[1]

When a defendant challenges the sufficiency of the evidence upon which he was convicted, our review "is guided by strict principles of deference to a jury's verdict."

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

*United States v. Rosario*, 118 F.3d 160, 162–63 (3d Cir. 1997).  Specifically, "[w]e must view the evidence in the light most favorable to the government and must sustain a jury's verdict if 'a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all the elements of the offenses.'"  *Id*. at 163 (quoting *United States v. Salmon*, 944 F.2d 1106, 1113 (3d Cir. 1991)).  Thus, even where an insufficiency challenge has been  preserved through a timely motion for judgment of acquittal, the defendant has "a very heavy burden."  *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997) (quoting *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir.1995)).  Where, as here, an insufficiency claim has not been preserved, the burden is even greater, as we will only review for plain error.[2]  *See United States v. Mornan*, 413 F.3d 372, 381 (3d Cir. 2005).  "A conviction based on insufficient evidence is plain error only if the verdict 'constitutes a fundamental miscarriage of justice.'"  *United States v. Thayer*, 201 F.3d 214, 219 (3d Cir. 1999) (quoting *United States v. Barel*, 939 F.2d 26, 37 (3d Cir. 1991)).

### III.

---

[2]  While Hiller indicated his intention to file a Rule 29(c) motion, he never did so.  In a letter addressed to Judge Robreno two days after his conviction, Hiller requested new counsel and stated that "once . . . appointed new counsel," he would file motions for acquittal and a new trial.  District Court Docket Entry No. 114.  Even if we were to assume that this was sufficient to put the government on notice of Hiller's intention to raise a sufficiency challenge, it would not impact the outcome of this case.  *See United States v. South*, 28 F.3d 619, 627 (3d Cir. 1994) (stating that Rule 29 "does not require anything more" than putting government on notice that defendant is "contesting the sufficiency of the evidence").  As described below, the government clearly presented enough evidence at trial to convict Hiller on all charges irrespective of whether we use the plain error standard or not.

4

On appeal, Hiller contends that the Government presented insufficient evidence to sustain his conviction on any count. Hiller's argument, which applies to each of the three counts, rests on the following two pieces of evidence: Leon's testimony that Hiller was not the "Kev" who participated in the robbery, and the fact that Liberman, who identified Kev as Hiller, did not participate in the actual robbery in question. Based on this evidence, Hiller argues that there was "no evidence" that he "actually participated in the robbery, . . . possessed or aided and abetted in the possession of a firearm, or that he conspired with the two actual robbers." Appellant's Br. at 7. A review of the record, however, readily belies Hiller's claim with respect to all three counts. As we detail herein, the government provided ample evidence to support a rational jury's conclusion that Hiller was the "Kev" who coordinated, participated in, and provided the gun for, the robbery.

We start first with Hiller's conviction for conspiring to interfere with interstate commerce by robbery. To be guilty of this offense, there must be evidence that Hiller, Leon, and Moreta (1) shared a "unity of purpose," (2) had a common intent to commit a robbery, and (3) agreed "to work toward that goal, which [Hiller] knowingly joined." *United States v. Boria*, 592 F.3d 476, 481 (3d Cir. 2010). Based on Liberman's testimony alone, the jury had a sufficient basis to conclude that each of these requisite elements was satisfied. Liberman testified that three weeks prior to the robbery, Hiller proposed the idea of robbing the Brinks truck, and that shortly before the robbery in question, Hiller, Moreta, and himself unsuccessfully attempted to carry out a nearly

5

identical plan.  In that first attempt, Liberman testified that Hiller provided the gun, pepper spray, and getaway car.  Liberman further testified that, on the morning of the robbery in question, he dropped Moreta and Leon off at Hiller's apartment, and that prior to leaving, he heard Hiller instructing Moreta and Leon on how they would rob the guard.  Finally, Liberman testified that, minutes after the robbery at issue, Hiller drove Leon and Moreta over to Liberman's waiting place.

Hiller attempts to discount Liberman's testimony on the basis of Leon's testimony that Hiller was not the "Kev" he conspired with.  A rational jury, however, would be warranted in discrediting Leon's testimony with respect to Kev's identity.  As Leon himself testified, he had never met Kev until the morning of the robbery.  Leon also testified that he was high on marijuana when he met Kev, and remained high throughout the course of the robbery.  Liberman, by contrast, had previously worked and socialized with Hiller, and knew Hiller well enough to have Hiller's cell phone number (which Liberman called—and received calls from—numerous times throughout the morning of the robbery).  Moreover, details that Leon provided about "Kev"—including the location of his apartment and type of car he drove (i.e., a red jeep)—provided a clearly compelling match with Hiller.   Finally, FBI Agent Kenneth Vincent testified that Hiller confessed to "provid[ing] advice" to the robbers, and driving to the scene of the robbery to be "their eyes."  A. 241–42.  We have no trouble, therefore, concluding that the testimony adduced at trial provided a sufficient basis for the jury to conclude that Hiller conspired with Leon and Moreta to interfere with interstate commerce by robbery.

6

We now address Hiller's other two convictions. The evidence described above is sufficient to sustain the jury's conviction on both counts. As we have already established, a rational jury would be justified in concluding that the person Leon referred to as "Kev" was, in fact, Hiller. Accordingly, since Leon testified that Kev served as the getaway driver for the robbery of an armored truck, we will affirm the conviction for interference with interstate commerce by robbery. *Cf. United States v. Williams*, 344 F.3d 365, 372 (3d Cir. 2003) ("Our case law has consistently treated escape as part and parcel of a bank robbery, including federal bank robbery . . . ."). Similarly, since Leon testified that Kev gave him the gun and instructed him how to use it to carry out the robbery, we will affirm Hiller's conviction for using a firearm during and in relation to a crime of violence. *See United States v. Gordon*, 290 F.3d 539, 547 (3d Cir. 2002) ("[D]efendant can be convicted of aiding and abetting a violation of § 924(c)(1) without ever possessing or controlling a weapon if the defendant's actions were sufficiently 'intertwined with, and his criminal objectives furthered by' the actions of the participant who did carry and use the firearm." (quoting *United States v. Garth*, 188 F.3d 99, 113 (3d Cir.1999)).

**IV.**

For the foregoing reasons, we will affirm Hiller's conviction and the District Court's judgment of sentence.