**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 09-2062 and 09-3547
_____

UNITED STATES OF AMERICA

v.

DOROTHY PRAWDZIK,

Appellant in 09-2062.

v.

JOHN JACKEY WORMAN,

Appellant in 09-3547.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. Nos. 2-07-cr-00040-003 and 2-07-cr-00040-001)
District Judge: Honorable Lawrence F. Stengel

_____

Submitted under Third Circuit LAR 34.1(a)
on April 27, 2012

Before: GREENAWAY, JR., ROTH and TASHIMA*, <u>Circuit Judges</u>

(Opinion filed: May 30, 2012)

_____

*Honorable A. Wallace Tashima, Senior United States Circuit Judge for the Ninth
Circuit, sitting by designation.

**ROTH**, Circuit Judge:

In related appeals arising from the same prosecution and trial, Dorothy Prawdzik appeals the District Court's April 7, 2009, judgment of conviction, and John Jackey Worman appeals the District Court's August 26, 2009, judgment of conviction. For the following reasons, we will affirm the judgments of the District Court.

## I. Background

On January 23, 2006, the Delaware County District Attorney's Office began investigating Worman and Prawdzik after Prawdzik's younger daughter Chr.B. reported that she had been sexually abused by Worman from 1997 to 2002, when she was ten to fifteen years old. Chr.B. described in a handwritten statement how Worman saved photographs and videotapes of the assaults on a computer at 103 Walnut Street, Colwyn, Pennsylvania:

> When [Worman] started the sex he started to videotape me and then he said he skans [sic] the video on a disk and saves it into the computer at 103 Walnut Street. Everything happened in his room. He told me that no one would ever get it. When he dies, he'll tell me the password and only I will see the good times we had.[1]

On January 31 and February 2, 2006, Detective Sergeant John Kelly recorded two consensual telephone conversations in which Chr.B. asked to visit Worman to discuss

---

[1] 103 Walnut Street was the home of Worman's mother, who lived there with Worman, three of Prawdzik's children, and Worman and Prawdzik's child.

what had happened between them, but Worman refused and questioned whether the call was being recorded.

Based on Chr.B.'s report, the recorded calls, his own training and experience, and published information regarding child sex offenders, Detective Kelly applied for and obtained a search warrant for 103 Walnut Street. The police executed the warrant and seized computers, hard drives, CDs, cameras, pictures, and VHS tapes. Based on the evidence seized, Detective Kelly subsequently obtained a search warrant for 492 Westmont Drive, Collingdale, Pennsylvania, the residence of Worman and Concetta Jackson.

The seized evidence consisted of more than 1.2 million images, including 11,000 video clips, and approximately 60 hours of videotape of Worman sexually assaulting minors. Included were depictions of Prawdzik sexually abusing four of her nieces and taping Worman's assaults on them. Prawdzik admitted that she had sexually abused her older daughter Cha.B. with Worman and had subsequently sent her children to live with Worman. Prawdzik further admitted that she had abused her nephew J.P. without any involvement by Worman.

On December 12, 2006, Detective Kelly called Prawdzik and asked to set up a meeting to discuss the evidence seized during the searches. Prawdzik met with Detective Kelly the following day and agreed to be interviewed in a conference room at the local FBI office. Prawdzik was informed that she was not going to be arrested and was free to leave at any time. During the meeting, Prawdzik made inculpatory statements, which she later moved to suppress.

3

On July 24, 2008, a grand jury returned a 56-count Superseding Indictment charging Worman with the use of a minor to produce visual depictions of sexually explicit conduct, in violation of 18 U.S.C. § 2251(a) (Counts 1-55), and the possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 56). Prawdzik was charged in Counts 11 through 25, and Jackson was charged in Counts 26 through 55.[2]

The District Court denied the defendants' pre-trial motions to suppress evidence, to sever defendants, to dismiss the indictment based on the statute of limitations, and to suppress statements. The District Court granted the government's motion to admit evidence, namely the testimony of Cha.B. and J.P., pursuant to Fed. R. Evid. 404(b) and 414.

On September 4, 2008, Worman and Prawdzik proceeded to trial. During the ten-day trial, three of Prawdzik's children and her nephew J.P. testified. In particular, Cha.B. testified that Prawdzik and Worman sexually abused her in a threesome when she was ten years old, and J.P. testified that Prawdzik fondled him and engaged in fellatio when he was between nine and twelve years old. The jury returned verdicts of guilty on all 56 counts against Worman and all 15 counts against Prawdzik.

On April 1, 2009, the District Court granted the government's motion for an upward departure and sentenced Prawdzik to a term of 30 years' imprisonment. On August 12, 2009, the District Court sentenced Worman to a term of 120 years' imprisonment. Prawdzik and Worman appealed.

---

[2] On September 2, 2008, Jackson pled guilty to Count 46 and was subsequently sentenced to 300 months' imprisonment.

**II. Discussion**

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

**A. Prawdzik**

**1. Federal Rules of Evidence**

Prawdzik contends that the testimony of Cha.B. and J.P. should have been excluded pursuant to Fed. R. Evid. 401, 403, and 404(b).[3] We review the District Court's evidentiary rulings for abuse of discretion. *United States v. Williams*, 458 F.3d 312, 315 (3d Cir. 2006).

Generally, evidence of other crimes or prior bad acts is not admissible to prove character or demonstrate action in conformity with those acts, but such evidence may be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Moreover, "[i]n a case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." Fed. R. Evid. 414. Relevant evidence may be excluded if its probative value is substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 401, 403.

---

[3] Although the parties refer to "Chr.B." in their briefs, it is clear from the record that it was Cha.B. who testified at trial regarding the joint sexual abuse by Prawdzik and Worman.

5

The District Court correctly determined that the incidents about which Cha.B. and J.P. would testify to at trial were acts of "child molestation" falling within the meaning of Rule 414. The District Court concluded that the testimony was admissible, after expressly finding that the evidence was relevant and that its probative value was not substantially outweighed by the danger of unfair prejudice. The court further explained that the evidence was also admissible under Rule 404(b) to show Prawdzik's state of mind, motive, opportunity, or absence of mistake. Because the District Court did not abuse its discretion in admitting the testimony of Cha.B. and J.P., we will affirm.

### 2. Suppression of Statements

Prawdzik contends that statements made during her December 2006 meeting with Detective Kelly should be suppressed because she was in custody and questioned without being advised of her *Miranda* rights. We review the conclusion of whether a person was "in custody" for *Miranda* purposes *de novo* and the underlying factual findings for clear error. *United States v. Jacobs*, 431 F.3d 99, 104 (3d Cir. 2005).

*Miranda* warnings "are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Where, as here, the individual has not been formally arrested, "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so." *See United States v. Leese*, 176 F.3d 740, 743 (3d Cir. 1999).

6

Prawdzik concedes that she voluntarily agreed to the meeting, was informed that she was free to leave, and chose to be interviewed at the FBI office. Prawdzik does not contend that any coercive tactics were used, and she acknowledges that she took breaks during the interview, never indicated that she wanted to stop the interview, and never asked for an attorney. After reviewing the record, it is clear that Prawdzik was not "in custody" and thus *Miranda* warnings were not required. We will thus affirm the District Court's denial of Prawdzik's motion to suppress her statements.

### 3. Severance

Prawdzik contends that the District Court erred by declining to sever her trial from that of co-defendant Worman. We review the District Court's denial of a motion for severance for abuse of discretion. *United States v. Hart*, 273 F.3d 363, 369 (3d Cir. 2001).

If the joinder of defendants in an indictment appears to prejudice a defendant, the court may sever the defendants' trials. *See* Fed. R. Crim. P. 14. The defendant has, however, "a heavy burden in gaining severance." *United States v. Quintero*, 38 F.3d 1317, 1343 (3d Cir. 1994). Indeed, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Moreover, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538-39.

Prawdzik briefly argues that her right to a fair trial was compromised since the voluminous evidence admitted against co-defendant Worman would not have been

7

admissible against her in a separate trial. Prawdzik is not entitled, however, to a separate trial "merely because the evidence against a co-defendant is more damaging that that against [her]." *See United States v. Dansker*, 537 F.2d 40, 62 (3d Cir. 1976). Rather, "the proper inquiry is whether the evidence is such that the jury cannot be expected to 'compartmentalize' it and then consider it for its proper purposes." *Id.* A review of the record shows that the jury could 'compartmentalize' the evidence, which included, for example, some images depicting Worman and other images depicting Prawdzik. We conclude that the District Court did not abuse its discretion in denying Prawdzik's motion for severance.

### 4. Motion for Judgment of Acquittal

Prawdzik argues that the District Court erred by denying her motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29 because the images for Counts 11 through 20 do not meet the statutory definition of sexually explicit material and there is no connection between Prawdzik and the images for Counts 21 through 25, which show her infant niece being sexually assaulted by Worman. We review *de novo* the District Court's denial of a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29. *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). We "view the evidence in the light most favorable to the government and must sustain a jury's verdict if a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all the elements of the offenses." *United States v. Rosario*, 118 F.3d 160, 163 (3d Cir. 1997) (internal quotations omitted).

8

To determine whether a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area of any person" under 18 U.S.C. § 2256(2)(A), the court considers the following factors: 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area, 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity, 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child, 4) whether the child is fully or partially clothed, or nude, 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity, and 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer. *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) (adopting the factors from *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)).

Prawdzik cursorily argues that the images do not meet the *Dost* factors. To the contrary, the images meet every *Dost* factor, and a reasonable jury could find the images to be a "lascivious exhibition" within the statutory meaning. We also reject Prawdzik's argument that merely because she is not portrayed in the images for Counts 21 through 25, there is no evidence connecting her to them. In fact, Prawdzik herself admitted to bringing her niece to Worman, posing her niece in front of the camera, and watching as Worman sexually assaulted the infant. We find, therefore, that the District Court properly denied Prawdzik's motion for a judgment of acquittal.

**5. Sentence**

Prawdzik first contends that she was entitled to a four-level reduction pursuant to U.S.S.G. § 3B1.2 due to her minor role in the offense. We review the District Court's

9

denial of a downward adjustment *de novo* when based on a legal interpretation of the Guidelines but only for clear error when based primarily on factual determinations. *United States v. Carr*, 25 F.3d 1194, 1207 (3d Cir. 1994). As the District Court noted, Prawdzik played a central role and used her relationship of trust with her nieces to procure them for the crimes committed. We will affirm the denial of a reduction based on minimal participation.

Prawdzik also argues that the District Court erred by departing upward and sentencing her to 360 months' imprisonment. We review *de novo* the District Court's decision to depart upward as to whether the increase was permissible and review the reasonableness of the degree of the departure for an abuse of discretion. *United States v. Yeaman*, 194 F.3d 442, 456 (3d Cir. 1999). A district court may depart from the Guidelines if it finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *United States v. Stuart*, 22 F.3d 76, 82-83 (3d Cir. 1994).

The District Court thoroughly considered the factors under 18 U.S.C. § 3553(a) and departed upward pursuant to U.S.S.G. § 5K2.8 for "extreme conduct," meaning conduct that was "unusually heinous, cruel, brutal, or degrading to the victim." *See* U.S.S.G. § 5K2.8. The record reveals that Prawdzik abused the trust of her children, nieces, and nephews and exploited those relationships to commit, in the words of the District Court, "unspeakable acts which defy belief." Indeed, even after abusing her own daughter with Worman, she sent her children to live with him, and she brought her ten-

month-old niece to Worman and recorded his sexual assault of her. We conclude that the upward departure was permissible and that the District Court did not abuse its discretion in the degree of that departure.

**B. Worman**

Worman's sole argument on appeal is that the District Court erred by denying his motion to suppress evidence gathered as a result of the searches of 103 Walnut Street and 492 Westmont Drive. Although he acknowledges that the searches were conducted pursuant to search warrants, Worman contends that the warrants were invalid because they were based on impermissibly stale information.

We review the District Court's suppression ruling for clear error as to its factual findings and exercise plenary review over its legal conclusions, *e.g.*, *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010). Age of the information supporting a warrant application is a factor in determining probable cause. *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993). Age alone, however, does not determine staleness. *Id.* Rather, staleness is a contextual inquiry in which we must also examine the nature of the crime and the type of evidence. *Id.*

In the context of child pornography, we have repeatedly recognized that "persons with an interest in child pornography tend to hoard their materials and retain them for a long time." *United States v. Vosburgh*, 602 F.3d 512, 528 (3d Cir. 2010). Indeed, "pedophiles rarely, if ever, dispose of child pornography." *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002) (discussing *Harvey*, 2 F.3d at 1322). We have also distinguished between adult and child pornography, explaining that "presumably

11

individuals will protect and retain child pornography for long periods of time because it is illegal and difficult to obtain." *Id.* Of course, we do not hold that information concerning child pornography crimes can never grow stale.

Worman argues that the information supporting the search warrant for 103 Walnut Street was impermissibly stale because the sexual abuse of Chr.B. ended at least three years prior to the search warrant application. We disagree. The affidavit indicates that Worman abused Chr.B. over a five- or six-year period in his room at 103 Walnut Street, took pictures and videos of the abuse, and scanned the videos to his computer. The affidavit also states that Worman and Chr.B. had recent contact by phone. Detective Kelly noted his extensive personal experience and training related to child sexual abuse and child pornography, as well as his opinion that individuals interested in child pornography tend to retain such material for extended periods of time. Given the long period of repeated sexual abuse and the fact that Worman transferred the videotapes of the assaults to his computer, we conclude that there was a "substantial basis" for the magistrate judge to conclude that the affidavit established probable cause. In sum, we will affirm the denial of Worman's motion to suppress evidence.

## III. <u>Conclusion</u>

For the foregoing reasons, we will affirm the judgments entered by the District Court.

12